# CHARLESTON.

## ADKINS *et al. v.* SPURLOCK *et al.*

. Submitted February 7, 1899—Decided April 1, 1899.

1. ADVERSE POSSESSION—*Tenant for Life—Deed—Statute of Limitations.*

   The deed of a life tenant, whose seisin is barred by the statute of limitations, is inoperative, and conveys no title. (p. 142).

2. ADVERSE POSSESSION—*Tenant for Life—Ejectment.*

   The reversioner or remainder-man who takes such deed from the life tenant cannot maintain a suit for the possession of the property involved during the continuance of the life tenancy. (p.142).

3. STATUTE OF LIMITATIONS—*Adverse Possession—Title.*

   The bar of the statute of limitations not only defeats the remedy, but devests the title, and confers it upon the adverse holder. (p. 142)·

4. EJECTMENT—*Possession.*

   The plaintiff in ejectment must be entitled to possession at the commencement of his suit. (p. 143).

Error to Circuit Court, Lincoln County.

Action by Ansel Adkins and M. E. Adkins against Seth Spurlock and John S. Yeager. Judgment for plaintiffs, and defendants bring error.

*Reversed.*

J. E. CHILTON, CAMPBELL, HOLT & CAMPBELL, J. R. WILSON and C. E. BURNS, for plaintiffs in error.

BROWN, JACKSON & KNIGHT, A. F. MORRIS and LACE MARCUM, for defendants in error.

DENT, PRESIDENT:

This is an action of ejectment, brought against Seth Spurlock and John S. Yeager in the circuit court of Lincoln County by Ansel Adkins and M. E. Adkins, an infant,

by, etc., for the recovery of a parcel of land, part of two parcels owned by their ancestor, Parker Lucas, and by them inherited from their mother. Their title was deraigned as follows: (1) A grant for seventy-five acres, dated July 24, 1810, from the commonwealth of Virginia to Ransom Dial, who conveyed to William Hatfield, August 5, 1837. (2) A grant dated July 1, 1836, from the commonwealth of Virginia to William Hatfield, for seventy-seven acres, adjoining the above. (3) A deed dated September 6, 1845, from William Hatfield and wife, conveying the above two parcels of seventy-five acres and seventy-seven acres, respectively, to Parker Lucas. (4) A deed dated September 24, 1868, from Parker Lucas and wife to John M. and Minerva Lucas, his children. In 1869 Minerva Lucas intermarried with Paris Adkins, and afterwards, in 1877, died, leaving surviving her two children, the plaintiffs, who were twenty and twenty-three years old, respectively, at the time of the institution of this action. The recovery sought is of the lower half of the tract of one hundred and fifty-two acres composed of the above two parcels, to which lower half the plaintiffs, in addition to the estate inherited from their mother, held deeds as follows: One from John M. Lucas, dated December 11, 1865, for his interest as co-tenant in such lower half; and one from Paris Adkins, dated January 7, 1896, a quitclaim for any interest he might have as tenant by the curtesy. The sole defense is the statute of limitations. The defendants claim under a title bond executed by virtue of the will of J. A. Holly, deceased, which is as follows:

"Know all men by these presents, that I have sold to 'Lifus Spurlock this day my interest in the Parker Lucas home place, for the sum of eight hundred dollars. I agree to settle Miller's part in the same, if I can in a reasonable way, and give 'Lifus Spurlock possession of the same in the spring. I agree to give him a general warrantee deed to the sold tract, and the same kind of a deed to the back land as is invested in me. The land is the land sold by Joseph Miller as trustee to J. A. Holley, dec'd, Wm. Miller and Spencer Midkiff. The said Spurlock has paid me this day five hundred dollars on the land, for which he is to have a credit for, provided Miller and I can in a reasonable

way settle, and if we can't fix it I agree to pay him his money back, with interest, for which I have given him my note for the same.   D. S. Holley, Executor of J. A. Holley, Dec'd.   This June 24, 1884." On the back of the aforesaid instrument is the following, to-wit: "I further agree that the said Spurlock is to have four years to pay the balance in.   D. S. Holley."   Also the following entries are on the back of said instrument, to-wit: "Credit the within bond by cash, $500, this June 24, 1884. Cr. the within $20, his June 20th, 1885.   Cr. the within $25.00 this March 1st, 1886.   Cr., the within $25.00, this Dec. 20th, 1886. Cr. the within, $25.00, this March 23d, 1887.   Cr. the within by cash, $75.00, March 31, 1886.   Cr. the within article, June 23d, 1894, $20.00, by cash and receipt for by J. A. Holley."   The following assignment is also indorsed on the back of said instrument:

"June 1st, 1894.   I assign the within title bond to Seth Spurlock, for value received of him.

his

"Elifus  X  Spur-lock."

mark

The parol evidence undoubtedly establishes that there had been an agreed division of the land between John Lucas and S. D. Holley, and that Eliphus Spurlock and John Yeager, his son-in-law, took possession of the Holley portion of the land according to such division in 1885, and the defendants and those under whom they claim were in actual, continuous, notorious, and adverse possession thereof until the bringing of this suit, in 1896, a period of more than ten years.   While there is some little dispute as to the exact time when the division line was finally established and agreed upon, yet the evidence plainly shows that the defendants were in actual possession and occupancy of the land, to the exclusion of Paris Adkins, openly and notoriously claiming the same as their own during the period aforesaid, and were undisturbed in any manner in their possession thereof.   Partition, though it be void, and holding land in severalty by co-tenants, is a mutual ouster of each other as to the portion in actual occupancy, and is, therefore, adverse. · *Jackson* v. *Tibbits*, 9 Cow. 241; *Gautier* v. *Howard*, 38 Mo. 68; *Cryer* v. *Andrews*, 11 Tex. · 170 *Scoby* v. *Sweatt*, 28 Tex. 713.   There can be no

question that as to both John Lucas and Paris Adkins the possession of the defendants and those under whom they claim was adverse from the spring of 1885, and, if there is nothing else in the way, the bar of the statute of limitations as to them is complete. Such being the case, their deeds conveyed no title to the plaintiffs, for their title was already by the statute vested in the defendants. As is said in *Hall* v. *Webb*, 21 W. Va. 325: "In such cases it is settled that, when the statutory bar attaches, not only the remedy for the recovery of the property is gone, but that the absolute title thereto is at once transferred to and thereby vested in the possessor of the property." It is insisted that the life estate of Paris Adkins by his deed was merged into the estate of inheritance held by his children. This is undoubtedly the general rule. 15 Am. & Eng. Enc. Law, 315. But where the life tenant is wholly diseised by the statute of limitations, his deed is inoperative to confer title. *Webster* v. *Gilman*, 1 Story, 499, (Fed. Cas. No. 17,335); 1 Am. & Eng. Enc. Law (2d. Ed.) 883, note 1, authorities collected. In the case of *Baker* v. *Oakwood*, 123 N. Y. 16, (25 N. E. 312), it was held that: "Continuous adveres possession of land for a period sufficient to bar an action for its recovery not only cuts off the owner's remedy, but divests him of his estate, and transfers it to the party holding adversely. The adverse possession is conclusive evidence of title in the latter." In this latter case it was held that a widow's deed for her life estate, which had become barred by the statute of limitations, was ineffectual to convey any interest to the person holding the remainder, and that an action instituted by the remainder-man before the termination of such life estate was not maintainable. That is this case almost precisely. By virtue of the statute of limitations the life estate of Paris Adkins was vested in the defendants, and until the termination thereof their suit was not maintainable. There is no question about the bar of the statute as to Paris Adkins. The evidence clearly and decidedly, on this issue, preponderates in favor of the defendants..

The plaintiffs, through their counsel, insist that, Paris Adkins now being dead, the writ of error should be dismissed. The only question properly presented to the cir-

cuit court was as to whether the plaintiffs claiming under John Lucas and Paris Adkins could maintain this suit. The court held they could do so. Now, on writ of error to this Court they insist the writ should be dismissed, and their judgment should stand, although it is erroneous, for the reason that only the question of costs is involved. Had the judgment been in favor of the defendants, they could have sustained such a motion, as it would have left the parties in the same position they were at the beginning of the suit. But the record reveals that there is a controversy between the plaintiffs' title, as reversioners and the defendants title, which it was not proper for the circuit court to determine during the continuance of the life estate, and therefore not proper for this Court to consider at this time. This is, indeed, not "a moot court," and it cannot consider questions that were not involved in the litigation as determined by the circuit court. The only question the circuit decided was the "right to the possession of the premises at the time of the commencement of the suit." Code, c. 90, s. 14; 10 Am. & Eng. Enc. Law (2d Ed.) 496. Who is entitled to the possession at the present time is a moot question, so far as this Court is concerned, as it has not been passed upon by the circuit court. The former question it decided contrary to law. For this its judgment must be reversed, and, proceeding to enter such judgment as it should have entered, the plaintiffs' suit must be dismissed as prematurely instituted.

*Reversed.*