# CHARLESTON

RUSSELL v. TENNANT et al.

Submitted February 12, 1908.     Decided February 18, 1908.

| 63 | 623 |
| f64 | 112 |

| 63 | 623 |
| 66 | 147 |
| f66 | 261 |

1. ADVERSE POSSESSION—"*Color of Title*"—*Void Deed.*

A deed, void for defect apparent upon its face, constitutes color of title, open, notorious, exclusive and hostile possession under which for a period of ten years, gives title under the statute of limitations.   (p. 627.)

2. TENANCY IN COMMON—"*Disseizin.*"

Color of title and mere possession thereunder by one or more of a number of tenants in common, however long continued, does not amount to a disseizin of the co-tenants out of possession, and is, therefore, not adverse. The possession of one tenant in common is the possession of all.   (p. 628.)

3. SAME.

If one tenant in common be in possession and a stranger enter into possession with him, the co-tenants out of possession are not thereby disseized, and such joint occupancy of the tenant in possession and the stranger, is not adverse to the tenant out of possession. (p. 632.)

4. SAME—*Adverse Possession*—"*Ouster.*"

A tenant in common in sole possession of the land, may make his possession adverse to his fellow-tenant, by repudiating or disavow-

ing the relation of tenancy in common between them and any act
or conduct of his signifying intention to hold, occupy and enjoy the
premises exclusively of which the tenant out of possession has
knowledge, or of which he has sufficient information to put him
upon inquiry, amounts to an ouster of such tenant, and from the
time when he has notice thereof the possession of the other party
is adverse. (p. 632.)

5.  SAME—*Acts Constituting Ouster.*
    Such ouster may be effected by mere acts or matter *in pais*, un-
witnessed by any written memorial thereof, such as a verbal parti-
tion or exclusive occupation of the premises with notice of hostility
of claim. (p. 630.)

6.  SAME.
    A void deed, executed by one tenant in common to another,
though inoperative to pass title, and, whether regarded as consti-
tuting color of title or not, is sufficient to prove a disseizin of the
party who executed it. It being a written memorial of a hostile
claim asserted by the grantee and notice thereof on the part of the
grantor. (p. 629.)

7.  SAME.
    When title by adverse possession is established in one tenant in
common against his co-tenants, the deed, will, patent or other in-
strument under which both had claimed originally, operates in
favor of the claimant by adverse possession as color of title, so as to
extend his possession to unenclosed lands. (p. 631.)

8.  SAME.
    A tenant in common in possession of the land may not, by means
of his possession alone, disseize any of his co tenants, nor can a
stranger, by possession alone, disseize one tenant without disseizing
all, but either may disseize one or more of the tenants out of actual
personal possession, by adding an act of ouster to his sole occupancy
of the land. (p. 631.)

9.  DOWER—*Rights of Widow—Right to Possession.*
    The dower of a widow confers no right of possession upon her,
except as to the mansion house and curtilage, until after assign-
ment, and, before assignment, it is no obstacle to the right of entry
on the part of an heir and does not prevent the running of the sta-
tute of limitations against him in favor of an adverse claimant in
possession who has procured a relinquishment of the dower in his
favor by purchase thereof. (p. 635.)

Appeal from Circuit Court, Tyler County.

Bill by Samantha Russell against Cassie A. Tennant and
others. Decree for defendants, and complainant appeals.

*Affirmed.*

K. C. Moore, Pugh & Pugh and O. W. O. Hardman, for appellant.

A. B. Fleming, Thos. P. Jacobs, Charles Powell, Kemble White, C. B. Riggle, B. Engle and I. M. Underwood, for appellees.

Poffenbarger, President:

Samantha Russell has appealed from a decree of the circuit court of Tyler county, dismissing her bill and amended bill, filed against Cassie A. Tennant and others, for an accounting as to petroleum oil taken from a tract of land containing 176 acres, under a lease claimed by the South Penn Oil Company, and to prevent further operation under said lease, or, if such relief cannot be had, to have the oil and proceeds thereof placed in the hands of a receiver for conservation of her alleged right in respect thereto.

She claims a one-twelfth undivided interest in the land, as one of the twelve children of James Stewart, who died intestate in February, 1889, seized and possessed of it in fee simple. Sometime prior to July 1, 1890, Jacob S. Tennant and Cassie A. Tennant purchased the undivided interests of six of the children and obtained deeds therefor. In July, 1890, the Tennants instituted a partition suit against the widow and the six other children of James Stewart, deceased, one of whom was the appellant, Samantha Bussell. On the 13th day of August, 1890, a decree was entered in said suit by which the respective interests in the property were determined and commissioners appointed to go upon the land and divide it. But before this decree was executed, Jacob S. Tennant purchased the undivided interests of four of the other heirs, namely, Lucy Stewart, Elwood Stewart, Campsie Dell Lysle and Samantha Russell, and also the dower interest of Elva Stuart, widow of James Stewart. Having exhibited to the court in that suit the deeds for these interests, from which, together with the bill and decree, it appeared that he and Cassie A. Tennant were then the owners of ten-twelfths of the tract, and that only two interests were then outstanding in other persons, namely, Louis Stewart and Emma Copenhaver, infants, the decree, appointing commissioners and directing partition to be made, was set aside and the two outstanding interests were decreed to be sold, and, on the sale

40

thereof, Jacob S. Tennant became the purchaser, and the sale to him was confirmed by a decree entered on the 9th day of December, 1891, but the deed for these two interests was not executed and delivered until August 31, 1895. He took possession of the land in April, 1891, although he did not purchase the interests of the two infants until later, and the sale thereof to him was not confirmed until December 9, 1891. On the 28th day of June, 1894, he and Cassie A. Tennant executed an oil and gas lease to the South Penn Oil company, and, on May 1, 1897, they executed to the said company another such lease. Under these two leases, said company drilled a number of productive oil wells on the property. Louis Stewart, on the 29th day of June, 1900, brought a suit in equity, and obtained relief from the judicial sale of his interests, under the statute allowing him, as an infant, to show cause against the decree. That case came to this Court and the disposition thereof is reported in 52 W. Va. 559, under the title *Stewart* v. *Tennant.*

Notwithstanding the execution by Samantha Russell and her husband of a deed, bearing date September 1, 1890, purporting to convey to Jacob S. Tennant her one-twelfth interest in the land, and his long possession under his several claims of title, until the time of his death, 1901, and the possession of his heirs thereafter, until the commencement of this suit in June, 1903, her bill asserts title to said one-twelfth interest against Cassie A. Tennent and the heirs of Jacob S. Tennant, and demands an accounting as to the oil taken therefrom, on the ground of invalidity of the deed, the acknowledgment thereto being fatally defective for lack of conformity to the statute in existence at the time it was executed, in respect to the certificate of acknowledgment.

That there was once a tenancy in common between the Tennants and the appellant admits of no doubt. On the purchase of the six interests by Jacob S. and Cassie A. Tennant, this tenancy in common began, and it continued, without interruption, until the delivery of the deed from Samantha Russell and her husband to Jacob S. Tennant presumptively January 10, 1891, the date thereof. As to all the heirs of James Stewart, except Samantha Russell, Louis Stewart and Emma Copenhaver, it ceased, by the execution and de-

livery of deeds conveying the interests of the other three heirs, Lucy Stewart, Elwood Stewart and Campsie Dell Lysle.

Unless there has been an act of ouster as to Samantha Russell, starting the running of the statute of limitations against her, that relation of tenancy in common still exists. It undoubtedly existed as between Jacob S. Tennant and Louis Stewart and Emma Copenhaver until after the purchase of their interests at the judicial sale and confirmation thereof December, 9, 1891, although Tennant had been in possession of the land prior to that time. And it is insisted that his possession, as against them, could not become adverse, until after the execution of the deed for their interests, made by the special commissioner in 1895, less than ten years prior to the institution of this suit. The delay in the execution of the deed was no doubt on account of time allowed for the payment of the purchase money. It is the usual practice, when land is judicially sold and payment of the purchase money deferred, to retain the title as security for the payment of the money.

The contention of counsel for the appellee is, first, that the deed of Samantha Russell, being void on its face, is not color of title; second, that, if color of title, the possession of the Tennants was not adverse to Louis Stewart and Emma Copenhaver, until after the execution of the deed for their interests in 1895, and, not being advers as to them, it could not be adverse as to any of the other co-tenents, of whom Samantha Russell was one; and third, that there was not, and could not, have been any ouster as to Samantha Russell, because there was not possession of the entire premises by Tennant under color of title for the requisite period of time.

That a deed absolutely void on its face is nevertheless good as color of title, notorious, hostile and exclusive possession under which, for the period of ten years, gives a good title, cannot be doubted. Decisions of this Court assert the proposition in express terms. *Randolph* v. *Casey*, 43 W. Va. 289; *Swann* v. *Thayer*, 36 W. Va. 46. But an attempt is made to found a distinction upon the difference between deeds, void for matter not apparent upon the faces thereof, and deeds, the invalidity whereof is apparent on their faces; it being claimed that a judicial declaration of invalidity is sometimes necessary to work its destruction; when the defect

is apparent, and that it is necessary in such cases as this. We are unable to concur in this view. The maxim, importing that all men are deemed to know the law, applies. If the invalidity of the deed is apparent upon its face, it is a void deed, no matter that its invalidity has not been declared, and a layman, or even a lawyer, might regard it as valid. His ignorance of the potentiality of the apparent defect avails him nothing, if he relies upon the deed alone. The virtue or efficacy which the law accords to such a deed, when possession has been held under it for a period of ten years, seems to stand upon mere tenderness of the law in favor of one, who, although bound to know it was void, has relied upon it, and held possession under it, mistakenly believing it to be good, or relying upon the acquiescence in his claim of title by all those whose interest it was to deny it. Title in such cases is not imparted by the deed. The deed is only an incident or circumstance bearing upon the conduct of the parties, disclosing intent, which the statute of limitations converts into good title. Without possession under it, the deed is absolutely worthless. Both courts and juries must disregard it. Possession without the deed would be worthless except to the extent of the actual enclosure. But both the deed and the possession produce a situation or relationship between the parties which the statute of limitations converts into good title, by denying a right of entry. As to whether a deed void on its face is color of title, the authorities are by no means uniform. "The decisions on this question seem to be fairly well balanced." 1 Cyc. 1087. However, we regard it as settled by our decisions, and rightly settled.

But, independently of this question, there is a doctrine or principle of ouster operating between tenants in common, whether co-parceners or not, not founded exclusively upon the doctrine of color of title. One may oust another or all the others, without any deed or other writing from him to them, by any act of hostility, while in possession, sufficient to show that he repudiates and disavows the relationship previously existing between them, which is brought to the knowledge of the other party. In *Adkins* v. *Spurlock*, 46 W. Va. 139, it was held that a parole or verbal partition between tenants in common and possession according thereto started the statute of limitations in favor of each against the other. There was

no color of title, no deed, no memorandum, no paper of any kind, signifying to each of the parties that the other claimed the land in severalty and held it in hostility to, and exclusion of, the other. In that case, it is said: "Partition though it be void, and holding land in severalty by cotenants, is a mutual ouster of each other as to the portion in actual occupancy, and is, therefore, adverse." In *Cochran* v. *Cochran*, 55 W. Va. 178, this Court held as follows, "When one tenant in common occupies the common property openly, notoriously and exclusively as the sole owner, keeping up the improvements, paying the taxes thereon and receiving to himself the rents and profits, and exercising over the property such acts of ownership as evidence an intention to ignore the rights of his cotenants, such acts amount to a disseizin and his possession will be regarded as adverse to his co-tenants from the time they are shown to have knowledge of such acts and claims." In *Justice* v. *Lawson*, 46 W. Va. 163, it was held that a partition not evidenced by writing would be sufficient, if followed by actual possession in severalty, to make the possession adverse. Of course, it is necessary that knowledge of the intention to hold exclusively be brought to the attention of the tenant whom it is proposed to oust. Accordingly, the Court said in that case: "It is the intention of the tenant or parcener in possession to hold in common property in severalty and exclusively as his own, with notice or knowledge to his co-tenants of such intention, that constitutes the disseizin." In *Cooey* v. *Porter*, 22 W. Va. 120, the real basis of the decision was the exclusive possession with hostile intent, brought to the notice of the opposite party that effected the disseizin, rather than the void deed. That instrument was a memorial of a transaction between the parties which evinced notice to the ousted tenant of the hostile intent of the one in possession. And so it was in the case of *Randolph* v. *Casey*, 43 W. Va. 289.

In such cases the void deed, contract of partition, or conduct of the parties in establishing the division line, or express notice of adverse holding, whatever may be its form, is not in reality color of title. It does not always mark the limits of the claim, nor operate to pass title. It creates an equitable right or title, and the location and area of the land, in which that title is acquired, are generally marked and desig-

nated by the deed or will under which both parties claim. If there is any color of title involved, and there must be as to unenclosed lands, that instrument is the paper by which the boundaries are described and limits fixed. In *Adkins* v. *Spurlock*, it does not appear that the land was enclosed, and there was no partition deed. The void deed in *Cooey* v. *Porter* was not regarded by the court as having any particular value or efficacy as color of title. It is nowhere called color of title in the opinion. JUDGE SNYDER, delivering the opinion of this Court, said: "The nature or character of the title or claim under which the occupying tenant asserts his ownership is entirely immaterial. It is the fact that he claims the property as his own and not the goodness of his title which makes his possession adverse. His claim may be founded on a defective or even a void deed or paper as well as upon a valid instrument, or it may be simply *in pais* without any paper or color of title and resting wholly upon a naked assertion of title or claim in himself accompanied by exclusive possession." That the deed in that case was treated as efficacious only to the extent of proving notice of the assertion by the defendant of his hostility of claim to all the land described in the deed under which both had previously held, and whether it was strictly color of title was not actually decided. JUDGE SNYDER said: "The paper and its contents exist as physical facts, and it must be conclusively presumed that Mr. Cooey and John Porter, the parties thereto, were fully cognizant of its contents. They must have had some object in the execution of it. That object is apparent. * * * * Unless we presume that they deliberately undertook to perform a solemn farce, it must be conceded that Mary Cooey intended by said paper to confer upon John Porter all her interest in said land, and that after its execution both she and said John believed that the said John had obtained from her all of said interest. And he having intended to acquire and believing he had acquired said interest, it must be presumed that his possession from that time was with an intention to claim and hold the same under and by virtue of said paper, and she being a party thereto. and entertaining the same belief as to its effect and purpose, necessarily had notice of his intention so as to hold the said interest. This under the rule of law before stated, would operate as an ouster and

from that time make the possession of said John adverse to that of the said Mary Cooey. * * * * The intention to hold the property as his own exclusively, with notice of that intention to his co-parcener, is the criterion by which the law determines the character of his subsequent possession." He claimed title under the deed to the common ancestor of the parties which fixed the location and the boundaries of the tract of land. Up to the time of the ouster, the extent of his interest was not defined upon the ground. He was seized of an interest in every acre, foot, particle and molecule of land within the limits of the ancestral deed. His right was co-extensive with the boundaries thereof, but not exclusive. His possession, until that time, extended to the whole of the land, but, like his right, it was not exclusive. When he had effected the ouster, his possession was still co-extensive with the boundaries in the deed, but exclusive, and, after the expiration of twenty years following the ouster, his title became perfect, not only in respect to area, but also as to the quantum of interest. By the act of ouster and subsequent possession, he changed not the limits of the territory in dispute, but the character of his possession and title. The ancestral deed conferred upon each heir the right of possession of all the land. Possession is evidence of title. Possession under such a deed is obviously possession under color of title, although the occupant is not the sole owner and his possession is that of his co-tenants; and, if being in possession, he exclude his co-tenant and make his possession hostile to him, his possession thereafter would logically and necessarily be adverse under color, as well as claim, of title. No reason is perceived, either why the void deed from the parcener may not be considered color of title, though it purports to convey only an undivided interest. It purports to vest a right of possession co-extensive with the boundaries of the tract and so lends color of right to the possession. In my opinion, both deeds could be regarded as color of title in such a case. No person is restricted to one claim of title. A man may have several titles to the same land and rely upon any or all of them.

In view of the alleged tenancy in common between the Tennants and Louis Stewart and Emma Copenhaver, because of the want of a deed for those two interests, at the time at

which it is claimed the adverse holding began, reliance is placed apon the legal proposition laid down in I Lomax's Dig. 623, "that a man cannot disseize another of an undivided moiety, as he might of a part of the land." The illustration given by Lomax states a case in which an owner of the true title was in possession, and a stranger entered into the possession with him, and they together occupied the land and received the rents and profits therefrom for twenty years. Afterwards, the heir of the owner of the true title who has never been ousted of his pcssession, brought an ejectment against the stranger and was allowed to recover. The same proposition is stated in Angell on Limitations, section 434, and the principle was applied in *Porter* v. *Hill*, 9 Mass. 33. This proposition rests upon the hypothesis of mere possession and reception of the profits. It leaves out the important element of ouster, notice of hostile intention. The sole possession of one tenant in common, however long continued, will not amount to a disseizin. *Reed* v. *Bachman*, 61 W. Va. 452. But if, in addition to his sole occupancy of the land, he does some act of a hostile character, importing intent to hold exclusively, and knowledge of this act, on the part of the tenant out of possession, is established, the possession is thereafter adverse. If, one tenant being in possession, a stranger enter into possession with him, and nothing more occurs, no disseizin of the tenants out of possession would be effected for the obvious reason that the possession of the one who is occupying the land is the possession of all, and he has not been disseized, and there is no notice of an adverse holding or claim. If, on the contrary, the stranger and the tenant in possession, upon the entry of the former or afterward, should repudiate or disavow co-tenancy with the party out of possession, a new element is introduced, an additional and highly important fact. The case does not stand alone upon possession under color or claim of title. To the occupancy of the stranger and one co-tenant, the fact of ouster of the other co-tenant has been added. By way of illustration, let it be supposed that one of two tenants in common, being in possession, should convey an undivided half to a stranger, and thereafter he and his grantee should remain in possession and repudiate or disavow the relationship of co-tenancy with the one out of pos-

session, why should not that be as effective as if the stranger
had not entered and the notice had been given only by the co-
tenant in possession? Though, in 1891, Jacob S. Tennant and
Cassie A. Tennant were the owners of only nine-twelfths of
the land and their possession was not adverse to that of Louis
Stewart and Emma Copenhaver, they had previously given
notice to Samantha Russell of their intention to claim and
hold her undivided interest in the land. It was not the mere
entry of a stranger under a hostil title. Such an entry alone
would not have disseized Samantha Russell, because it did
not disseize her co-tenants, Louis Stewart and Emma Copen-
haver, and because the relation of co-tenancy had previously
existed between her and Jacob S. Tennant himself, which
his mere possession could not destroy. His possession was
not only for himself, but for her also. But the Tennants did
more than merely enter under the strange title. They dis-
avowed and repudiated the claim of title of Samantha Rus-
sell and gave her notice of such repudiation and disavowal.
The argument is that no such ouster can be effected unless
the land is held in sole and exclusive possession. The au-
thorities relied upon do not sustain that position. All they
say is that mere possession will not do it. They do not go
to the extent of asserting that the entry and ouster combined
will not make the possession adverse. If such an ouster as
we have described is effected between two tenants in common,
making the possession of one adverse against the other, why
should it not be equally effective in the case of three, two
being in possession and disavowing the title of the third?
We are unable to perceive any reason why it should not be
as effective in one case as in the other. And this view seems
to accord with a principle of the law of adverse possession
declared in analogous cases. In *Wade* v. *Johnson,* 5 Humph.
(Tenn.) 117, it was held that if one or more of many tenants
in common be barred by the statute of limitations, and others
be within the saving of the statute, it shall not operate against
those who are within the saving of the statute to bar them;
nor shall the partition given by those within the saving of
the statute prevent the operation of the bar as to those with-
out the saving of the statute; each one shall recover or be
barred, as to his aliquot share or portion of the land, as he
may be within or without the saving of the statute. In

*McFarland* v. *Stone*, 17 Vt. 165, it was held that the statute of limitations may run against the estate of one tenant in common, without effecting the rights of the co-tenants who are under disability. In *Doolittle* v. *Blakesley*, 4 Day (Conn.) 265, the court said: "One tenant in common, as it respects his fellow-tenant, is always safe in the possession of his fellow-tenant, unless ousted. But when disseized, either by a fellow-tenant, or a stranger, he has his remedy in his own right, upon his own independent title; and if he will not exercise his right within 15 years he must suffer the ·consequences of an adverse possession, and lose his estate." The same principle is declared in *Moore* v. *Armstrong*, 10 Ohio 11; *Redford* v. *Clark*, 100 Va. 115; *Marstellar* v. *McClean*, 7 Cranch 156. Mr. Freeman, in his work on Co-Tenancy and Partition, at section 377, says: "Where one of the two co-parceners was under a disability and entered within 20 years after the removal of such disability, it was held that her entry could not operate in favor of the other co-parceners who had not been under any disability. * * * * The new title thus acquired by the disseizor must of necessity correspond with that on which the disseizin operated, as he could not acquire by disseizin a greater estate than that held by the disseizee. If the latter held only an undivided interest as tenant in common with another, the disseizor would acquire by disseizin a similar undivided interest; for it was only that on which the disseizin operated and took effect. The disseizor of one of several tenants in common acquiring a title by disseizin, therefore, becomes himself a tenant in common with the other co-tenants." The observations of JUDGE BRANNON in *McNeeley* v. *South Penn Oil Co.*, 52 W. Va. 616, relating to this question, were based upon the mere fact of possession under color of title. The element of ouster of a particular fellow-tenant, amounting to a disseizin of that tenant alone, was not present in that case.

As Jacob S. Tennant, at the time of his entry upon the land had bought the dower interest of the widow of James Stewart, it is contended that there was no right of entry on the part of the appellant, as against him and that the statute did not commence to run for that reason. There had been no assignment of the dower, and; neither in the hands of the widow nor her assignee, did it prevent an entry on the part

of the heirs. It gave no right of possession as against them. If the widow had any right of possession at all, it was limited to the mansion house. As against the heirs, she could only demand a share of the rents, issues and profits. The observations made in *Stewart* v. *Tennant*, 52 W. Va. 559, respecting the dower, have no relation whatever to the right of possession. That question was not at all involved in the case. The discussion was induced by the denial of Tennant's right, as owner of the dower interest, to participate in the profits of the oil wells opened after the death of the husband. It was a claim based upon an obligation resting upon the heir to yield part of the rents to the dowress, because of his failure to assign the dower. That obligation presupposes possession and right of possession in the heir, not the dowress.

We perceive no error in the decree and it will be affirmed.

*Affirmed.*