GILLESPIE v. POCAHONTAS COAL & COKE CO.

(Circuit Court of Appeals, Fourth Circuit. September 15, 1908.)

No. 789.

1. COURTS—FEDERAL COURTS—FOLLOWING STATE DECISIONS.
    Where there is a state statute directing the manner and form of the examination of a married woman on making a deed jointly with her husband conveying her separate lands, the construction placed upon such statute by the highest court of the state, declaring what the necessary requirements are in order to make such examination effective, becomes a rule of property in that state, binding upon the federal courts.

    [Ed. Note.—For cases in point, see Cent. Dig. vol. 13, Courts, §§ 957–959.

    State laws as rules of decision in federal courts, see notes to Wilson v. Perrin, 11 C. C. A. 71; Hill v. Hite, 29 C. C. A. 553.]

2. JUDGMENT—MATTERS CONCLUDED—DECREE IN PARTITION.
    At common law an action of partition does not determine title, but the parties after partition hold in severalty by the same title as before; and although by Code W. Va. 1899, c. 79, § 1 (Code 1906, § 3180), the court in a suit for partition is authorized to "take cognizance of all questions of law affecting the legal title that may arise in the proceedings," a de-

cree of partition in that state, awarding a part of the property to parties who appeared by the record to own a life estate therein, cannot be construed to give such parties title in fee simple as against infants, who were made parties and who owned the reversionary interest, where no question of title as between them was put in issue by the pleadings or litigated.

Appeal from the Circuit Court of the United States for the Southern District of West Virginia, at Bluefield.

For opinion below, see 162 Fed. 742.

J. W. Chapman and A. P. Gillespie, for appellant.

Albert W. Reynolds (Joseph S. Clark and Rucker, Anderson, Strother & Hughes, on the brief), for appellee.

Before PRITCHARD, Circuit Judge, and WADDILL and BOYD, District Judges.

BOYD, District Judge. This is a bill in equity, originally filed by Joseph S. Gillespie (appellant here) against the Pocahontas Coal & Coke Company (appellee here) in the circuit court for the county of McDowell, W. Va. The case was subsequently removed, upon the petition of defendant, for trial, to the Circuit Court of the United States for the Southern District of West Virginia, at Bluefield. The plaintiff in his bill alleges that he is the owner in fee simple and in possession of a tract of land containing 58.8 acres in the county of McDowell aforesaid, and by his suit he seeks to remove a cloud upon his title to said land, which he alleges exists by reason of the fact that the defendant has certain deeds and conveyances under which it claims to be the owner. Plaintiff prays in his bill that these deeds and conveyances so held by the defendant may be set aside and annulled, and the cloud upon his title thus removed.

The facts in the case, so far as we think necessary to present the points upon which it should be decided here, are as follows:

Some time previous to December, 1887, Thomas J. Meyers died intestate, seised at the time of his death of a tract of land situate in the county of McDowell aforesaid, containing 434 acres. At the death of said intestate the land descended to his eight children, who were his only heirs at law, and they then and there became entitled to the said land as tenants in common thereof; each owning an undivided eighth interest. Among intestate's children was a daughter named Louisa (or Mary L. B., as she was sometimes called), who, after the death of her father, married a man by the name of Thomas C. White. On the 9th of December, 1887, said Thomas C. White and his said wife made a deed to Harman Newberry, J. G. Watts, and William E. Peery, by which said deed they undertook to convey to the said three parties named the undivided interest of the wife in the lands of her deceased father, Thomas J. Meyers. This deed, with the certificate of acknowledgment thereon, is set out in the record as follows:

"This deed, made this 9th day of December, 1887, between Thomas C. White and Mary L. White, his wife, of the first, and Harman Newberry, J. G. Watts, and William E. Peery, of the second, witness that for and in consideration of one hundred and fifty dollars, the receipt of which is hereby acknowledged, the said Thomas C. White and Mary L. White, his wife, does bargain, sell,

163 F.—63

and convey their interest in the land of Mary L. B. White's father. J. T. Meyers, lying on the Dry fork of Sandy river, in McDowell county, W. Va. Said interest is one-eighth of said land owned by the said J. T. Meyers, deceased. The said parties of the first part warrant generally the title to the land hereby conveyed.

"Given under our hands and seals this day and year above written.

"Thomas C. X White. [Seal.]
mark

"Mary L. B. X White. [Seal.]
mark

"State of West Virginia, County of McDowell—to wit:

"I, James S. Brewster, a justice of the peace in Big Sandy district, do hereby certify that Thomas C. White and Mary L. B. White, wife of said White, personally appeared before me in my said county aforesaid and acknowledged the within deed, bearing date on the 9th day of December, 1887; and the said Mary L. B. White, wife of said Thomas C. White, being examined by me privily and apart from her said husband, and having the said writing fully explained to her, declared she had willingly executed the same and does not wish to retract it.

"Given under my hand this 9th day of December, 1887.

"Jas. Brewster, J. P."

After the making of this deed, some time in the year 1888, the said Mary L. B. White died intestate, leaving her surviving her said husband and four infant children, two of whom died, leaving two, named Mary White and Sterling White, still living. The plaintiff's title to the land in question is evidenced by several deeds, duly executed, conveying to him the interests of Mary White and Sterling White, the children of Mary L. B. White, in the 434-acre tract of land of which her father died seised and at her death descended to her children. The defendant's title, as shown by the record, is derived through a proceeding for partition of the said tract, commenced and consummated in the circuit court of McDowell county, W. Va.; in which said proceeding lot No. 3, the subject of this controversy, was allotted to Harman Newberry, J. G. Watts, and William E. Peery. Watts and Peery conveyed their interests in the lot to their co-tenant, Newberry, who in turn conveyed the lot to the Pocahontas Coal Land Company, a corporation, and this corporation by deed conveyed it to the Pocahontas Coal & Coke Company, the present defendant. The suit or proceeding for partition referred to was brought in the circuit court of McDowell county, W. Va., on the first Monday in December, 1894; the style of the suit being as follows:

"The bill of complaint of Harvey Beavers and Jessa Beavers, his wife, plaintiffs, v. Thos. Lambert and Rosa Lambert, his wife, Clifton Meyers, Charles Meyers, W. F. Harman, James Hall, Margaret Hall, his wife, Thomas White, Mary White, Sterling White (the two last named are infants under twenty-one years of age and heirs at law of Louisa White, dec'd, late Louisa Meyers), John W. Moore and Minnie Moore, his wife, late Minnie Meyers, W. P. Payne, Kewee Creek Flat Top Coal Company, a corporation organized under the laws of the state of West Virginia, Harman Newberry, John G. Watts, and William E. Peery, Defendants. In Chancery."

The plaintiffs alleged in the bill that Thomas J. Meyers died seised in fee of 434 acres of land in the county of McDowell, W. Va., etc.; further, that the said Thomas J. Meyers died in 1886, leaving him surviving Poley Meyers, his wife, who had since died, Clifton Meyers,

Charles Meyers, Roxie J. Meyers, Minnie J. Meyers, since married to Thomas Lambert, Margaret Meyers, since married to James Hall, Louisa Meyers, since married to Thomas White, and who has since died, leaving Thomas White, her husband, and Mary White and Sterling White, infant children, surviving her. After alleging several conveyances of interest in the land sought by the bill to be divided and now held by one or more of the parties named as defendants, the bill further alleges that on the 9th of December, 1887, Thomas C. White and Mary L. B. White, his wife, conveyed to Harman Newberry, J. G. Watts, and William E. Peery one undivided eighth interest in the said tract of land. The complainants alleged that they, in the right of the feme complainant, were the owners of an undivided eighth of said tract of land, and their prayer was that commissioners be appointed to lay off and assign to each of the said parties their respective portions of said land, etc. The return, as set out in the record, shows that process was executed personally on Roxie J. Meyers, Clifton Meyers, Charley Meyers, and W. P. Payne. That it was served by publication on the other defendants named, and also including Thomas C. White. There is no return, so far as appears, of any service upon the two infant children, Mary White and Sterling White; but in the decree it is stated that service of process was accepted for them by John W. Waldron, guardian ad litem appointed by the court to defend them and their interests in the suit.

The answer of John W. Waldron, as guardian ad litem of Mary White and Sterling White, infant defendants, says that "they are infants under the age of 21 years, and by reason of their infancy are incapable of understanding and taking care of their interests. They therefore, by their guardian ad litem, commit themselves and their interests to the jurisdiction of the court, and pray that no decree may be pronounced which will tend to their prejudice," etc. The court thereupon at March term, 1895, appointed A. C. Brewster, Charter Pruett, and C. A. Bailey commissioners to make actual partition of the said tract of 434 acres of land among the several tenants in common thereof, as shown in the bill. The report of said commissioners, set out in the record, shows that on the 17th of August, 1895, they proceeded to execute their duties under the decree of the court, and as to lot No. 3, subject of the present controversy, we quote from the said report the following:

"Lot No. 3 we laid off and assigned to Harman Newberry et al., which is bounded and described as follows: Beginning at a white oak at the lower edge of Dry Fork road, about 150 feet east of Dry fork, N. 28 deg. 34' E. 890 feet to a stake in line of the Meyers tract, of which this is a part; S. 70 deg. 37' W. 2,955 (crossing Dry fork at 280 feet) to a large chestnut on top of a spur at lower edge of a flat; S. 48 deg. 40' E. 176.9 feet to a poplar on a hillside; S. 22 deg. 00' E. 99.0 feet to a double chestnut; S. 31 deg. 00' E. 157.0 feet to a stake on top of a spur in a flat; S. 37 deg. 30' E. 154.1 to two small red oaks on top of a spur, corner to lot No. 2; N. 82 deg. 00' E. 2,117.7, crossing Dry fork to a stake on a hillside; N. 33 deg. 19' W. 800 feet to the beginning —containing 58.8 acres or ⅛ of the Meyers estate."

Following this report at March term, 1896, of the said court, a decree confirming the same was entered, and it was further decreed as follows:

"Each of the said parties shall hold their respective interests as laid out and assigned to them in said report, and the clerk of this court is directed to certify a copy of this decree and such other papers as required by section 8 of chapter 117 of the Code to the clerk of the county court of this county, to be by him recorded in the manner prescribed by law."

And then the costs are apportioned to be paid by the parties to the action according to their respective interests.

At the hearing the Circuit Court, upon the bill, the answer, the proofs, and exhibits, dismissed plaintiff's bill and entered a decree accordingly, from which the plaintiff appealed to this court.

In order to present the matter more fully, we think it well to give the chain of title of the two parties to this action, as set forth in the record.

The plaintiff relies upon the following deeds, conveyances, and evidences of title, to wit:

Deed made 22d day of June, 1903, by G. W. Altizer and Maggie Altizer, his wife, A. T. Lambert and Rosa Lambert, his wife, Henry I. Beavers and Jessa Beavers, his wife, Charles Meyers, and Mary White to J. S. Gillespie, conveying one-half interest in lot No. 3, containing 58.8 acres and also all of the right, title, and interest of the grantors in the tract of land on which the dwelling house of the late J. T. Meyers is situated.

Deed executed the 20th day of July, 1904, by Henry I. Beavers, commissioner of the circuit court of McDowell county, W. Va:, in the cause of Henry I. Beavers, guardian, v. Sterling White, to A. Z. Altizer, in which said lot No. 3, containing 58.8 acres, is conveyed, and also including all the land and interest in land which descended to Sterling White from his mother, and which she acquired from the estate of her father, J. T. Meyers.

Deed of October 10, 1904, executed by A. Z. Altizer and his wife to J. S. Gillespie, conveying the said tract of 58.8 acres.

Deed of September 25, 1905, from Sterling White to J. S. Gillespie, releasing and confirming unto Gillespie all right, title, and interest of the said Sterling White to certain lands in McDowell county, state of West Virginia, on the Dry fork and waters thereof, which were inherited by the said White from his mother, being the same lands inherited by his mother from the estate of her father, J. T. Meyers; the interest conveyed being one-sixteenth part of the lands owned by J. T. Meyers, including the lands conveyed by Henry I. Beavers, commissioner, to A. Z. Altizer, by deed dated July 20, 1904.

Deed of August 15, 1905, by Mary F. White to J. N. and J. W. Harman, attorneys, in which Mary F. White conveys to the said attorneys her interest in real estate in the county of McDowell, W. Va., on the waters of Dry fork; the said interest being derived to her from her mother, Louisa White, deceased.

Deed of April 13, 1906, executed by Mary F. White, J. N. Harman and his wife, and James W. Harman, to J. S. Gillespie, conveying the lands contained in the boundaries of lot No. 3, containing 58.8 acres, being the lands inherited by Mary A. White from her mother, the late Louisa White, and which were inherited by the said Mary Louisa White from her father, the late J. T. Meyers.

The defendant's chain of title is as follows, to-wit:

Deed executed on the 9th of December, 1887, by Thomas C. White and L. B. White, his wife, to Harman Newberry, J. G. Watts and William E. Peery, conveying a one-eighth undivided interest of Mary L. B. White in the lands of her father, J. T. Meyers; said land being on Dry fork of Sandy river, in McDowell county, W. Va. (This deed is set forth before in full.)

Deed of June 14, 1890, executed by William E. Peery and his wife and J. G. Watts and his wife to Harman Newberry, conveying to the latter the interest of the parties first named in the lands bought from Thomas C. White and Mary L. B. White, evidenced by the deed of December 9, 1887.

The record and proceedings in the case of Jessa Beavers and Henry Beavers, her husband, against Roxie J. Meyers et al., heretofore referred to, had in the circuit court of McDowell county, W. Va., beginning in December, 1894, and concluding with decree of March 13, 1896.

Deed from Harman Newberry and wife to the Pocahontas Coal Land Company, of September 12, 1901, conveying lot No. 3, as shown in the division, in which the land is described as being the tract that represents the interest of Mary L. B. White in the estate of her father, J. T. Meyers, deceased, which interest the said Mary L. B. White and Thomas C. White, her husband, by deed dated December 9, 1887, conveyed to the said Newberry, J. G. Watts, and W. E. Peery; said Watts and Peery conveying by deed dated June 14, 1890, their interest to said Newberry, and on partition of said estate said tract as described was allotted to said Newberry.

Deed of October 19, 1901, executed by the Pocahontas Coal Land Company, conveying the said tract, lot No. 3, to the Pocahontas Coal & Coke Company, the present defendant.

The contentions of the defendant against the granting of the relief prayed for in Gillespie's bill were: (1) That the deed from Thomas C. White and Mary L. B. White to Newberry, Watts, and Peery was a good and valid deed, and availed to pass the title of Mrs. White to her interest in her father's estate. (2) That in any event the decree in partition of the circuit court of McDowell county, assigning this 58.8 acres to those under whom the defendant claims, created title, and that, the decree not having been appealed from or otherwise directly impeached within the time required by law, it cannot now be attacked collaterally.

The Circuit Court determined the first contention adversely to the defendant, on the ground that the privy examination of Mary L. B. White on the deed of December 9, 1887, was not taken in accordance with the requirements of the law of the state of West Virginia, and said deed was therefore insufficient to pass her title. In passing upon this question the court, in an opinion filed in the case, after a mild criticism of the soundness of the decisions of the Supreme Court of Appeals of West Virginia, construing the statute in regard to the examination of femes covert upon deeds conveying lands belonging to them in their own right, says:

"Nevertheless, the present state of the law, as determined by the supreme appellate court of this state, is in favor of the proposition that the deed here in question does not avail to pass the title of the female grantor, and I feel constrained to abide by the law as declared until that decision has been duly reversed."

See McMullen v. Eagan et al., 21 W. Va. 233, Watson v. Michael, 21 W. Va. 568, and Laidley v. Knight, Trustee, et al., 23 W. Va. 735.

Upon an examination of the West Virginia authorities we unhesitatingly concur in this conclusion of the Circuit Court, and although we may be inclined to agree with the learned judge below as to the soundness of the principles declared in these decisions, yet we believe the law to be that where there is a state statute directing the manner and form of the examination of a married woman upon a deed, made jointly with her husband, conveying her separate lands, the construction placed upon such statute by the highest court of the state, declaring what the necessary requirements are in order to make such examination effective, becomes a rule of property in that state, and

should be adopted by the federal courts in passing upon questions involving the application and effect of such statute. This question, therefore, being eliminated, we come to the second contention of the defendant, in which it relies on the decree in partition entered by the circuit court of McDowell county, W. Va., in the proceeding of Harvey Beavers and Jessa Beavers, His Wife, v. Thomas Lambert et al.

The Circuit Court held that, notwithstanding the deed of December 9, 1887, executed by Thomas C. White and Mary L. B. White, his wife, to Newberry, Watts, and Peery, by reason of the defective examination of the feme covert, was ineffectual to pass her title to the land in question, yet that the subsequent proceeding in partition divested the title of her infant children, Mary White and Sterling White, and that by virtue of the decree in the said proceeding allotting parcel No. 3 to Newberry, Watts, and Peery, and the failure of the said Mary White and Sterling White thereafter, within the proper time, to have the said decree reviewed, modified, or reversed, constitutes an estoppel to them, or any person claiming under them, as to the title to said lot; in other words, that by virtue of said proceeding and decree the question of the title to lot No. 3, which was assigned to Newberry, Watts, and Peery, is res judicata. We readily admit that if in that proceeding the title to the lot in controversy could have been litigated as between the purchasers under the deed of December 9, 1887, and the surviving children of Mary L. B. White, and had been determined adversely to the latter, it would be final, and the Circuit Court of the United States would have no right in the present action to impeach the decree; but could such issue have been raised or tried in the proceeding for partition? It is a rule of the common law that neither the title nor the right to the possession of land can be determined in an action for partition; the effect of partition being only to designate the particular part of the land which each alleged coparcener is entitled to hold in severalty, but he holds it by the same tenure and in the same degree of estate as before the partition was made. However, we do not think this case rests upon that ground at all, but that it must be decided upon the decree itself, construing it in the light of the facts which existed at the time it was entered. The deed of December 9, 1887, was specifically referred to in the petition for partition, and it was also at the time upon the records of McDowell county, W. Va., in which the partition proceeding was brought and was pending. We have, therefore, the right to assume that the judge of the court took notice of the deed and of the manner of its execution, and that he saw that under the laws of West Virginia it was not sufficient to convey the interest of Mary L. B. White in her deceased father's land.

There is a further fact which is important in this connection, and that is that in the petition for partition it is alleged that Thomas C. White, the husband of Mary L. B. White, had survived her, and it is evident that the partition was proceeded with under the belief that said Thomas C. White was then still living. In the summons which was issued for the defendants on the 19th of November, 1894, Thomas White is named among them. Subsequently publication was made for him; and in the decree appointing commissioners to divide the land

entered on the 13th of March, 1895, it is ascertained as a fact that publication had been made for him. If, therefore, the court at that time treated Thomas C. White as still living, it would necessarily follow that Newberry, Watts, and Peery were entitled, by virtue of the deed of December 9, 1887, to hold the estate for life in the lands of Mary L. B. White existing as the curtesy consummate of her surviving husband. We think this view much more consistent with reason than that a chancellor, sitting in a court of equity, entered a decree divesting the title of two infant defendants to land inherited from their mother, and created a fee-simple title to the land in three purchasers who claimed under a deed such as that of December 9, 1887. If, as we have suggested, the court held Newberry, Watts, and Peery to be the owners of a life estate in an eighth interest in the Meyers land, they had a right to have partition, for it is a settled principle of law that a person having a limited estate in an undivided interest in land and entitled to the present possession thereof can maintain an action to enforce the assignment of such interest in severalty; but under these circumstances partition is temporary only, and does not affect a reversioner or remainderman who is entitled to partition when his estate falls into possession by reason of the termination of a particular estate. And no doubt, in view of this principle, the precaution was taken to make the infants, Mary White and Sterling White, parties to this proceeding, not that their title, as derived to them as heirs of their mother, was to be affected, but that they might be bound by the allotment, so that when they arrived of full age, and the life estate, which was supposed to be existing, had terminated, no further proceeding in partition would be necessary.

But it further appears that in the hearing of the present case by the Circuit Court the fact was disclosed that Thomas C. White was dead and that he died before the institution of the partition proceeding. Three witnesses, namely, Mrs. Maggie Altizer, who was a sister of Mary L. B. White, Charles W. Meyers, who was her brother, and Henry I. Beavers, a brother-in-law, all testified that Thomas C. White was dead, and Mrs. Altizer testified that he died in 1891. This testimony was uncontradicted. So, then, at the time of the partition proceeding Newberry, Watts, and Peery had no interest whatever in the Meyers land, and yet it is insisted by the defendant that because of the fact that they were made parties to the proceeding, and Mary White and Sterling White, the two infants, were also made parties, and in the course of the proceeding a lot was assigned to Newberry, Watts, and Peery without defining any estate whatever therein, and the assignment was confirmed by a decree of the court, there being no issue or question as to the title raised, such proceeding and the decree entered therein created in Newberry, Watts, and Peery a fee-simple title to one-eighth interest in the Meyers land, and thereby divested the two infants, Mary White and Sterling White, of whatever interest they had, and adjudicated finally the relative rights of these parties to the lands in controversy. We do not consent to this proposition. We regard as anomalous the position that a court of equity, in a proceeding for partition in which no question or issue of title is raised, where upon the face of the petition and the exhibits thereto it was

clearly shown that certain of the parties to the action had, at best, nothing more than a life estate in any part of the land to be divided, would, under such circumstances, undertake to increase such life estate to the dignity of a fee simple, and especially when it must have been clear to the court at the time that the owners of the fee simple were two infant children represented in the cause by a guardian ad litem. It is an especial province of a court of equity to protect the rights of infants in the subject-matter of a controversy pending therein, and we are unwilling to assume that a chancellor, in view of the facts which existed and were made known to the court at the time the partition proceeding before referred to was pending, would by decree have undertaken to divest infant parties of a fee-simple title to a particular lot of land, and invest parties who had only a life estate or no estate at all with such title. As we have before stated, the title to this lot of land was not in controversy. By the partition proceeding Newberry, Watts, and Peery did not and could not increase their estate in the lands divided. They did not, by virtue of the allotment, take as purchasers. They only became entitled to hold in severalty their shares in the land; the limit of estate being left as it was before. Partition does not create title. It only sets apart in severalty the interest of a tenant of a common possession with precisely the same degree of estate as was held by him in the land before division was made.

The deed of partition destroys the unity of possession, and henceforth each holds his share in severance. But such deed confers no new title or additional estate in the land. 2 Blackstone, 186. "Partition makes no degree. It only adjusts the different rights of the parties to the possession. Each does not take allotment by purchase, but is as much seised of it by descent from a common ancestor as of the undivided share by partition." Allnatt on Partition, 124. So that, if Newberry, Watts, and Peery had nothing in the land by virtue of the deed from White and wife, the mere fact of partition and assignment to them of a lot did not convey title.

In the foregoing we have laid down what we understand to be the common-law rule in partition; but the defendant insists that that rule is not in force in the state of West Virginia by reason of the fact that the Legislature of that state has enacted a statute which confers upon the courts of the state in partition proceedings the right to pass upon questions of title arising between the parties to such proceeding, and that thereby the common-law rule has been modified in that state. This statute is section 1, c. 79, Code W. Va. 1899 (Code 1906, § 3180), and reads as follows:

"Tenants in common, joint tenants, and coparceners, shall be compellable to make partition, and the circuit court of the county wherein the estate, or any part thereof, may be shall have jurisdiction in cases of partition, and in the exercise of such jurisdiction may take cognizance of all questions of law affecting the legal title that may arise in the proceedings."

The Supreme Court of Appeals of West Virginia has construed this statute, and we quote from the syllabus in Davis v. Settle et al., 43 W. Va. 18, 26 S. E. 557, which is given in the opinion of the Circuit Court as a leading case on the subject:

"Section 1, c. 79, Code 1891, authorizes a court of equity in partition cases to pass on all question of law touching the legal title of any one claiming to share in the partition to the interest he claims, if his interest be such as, if valid, will make him a co-owner in the common subject with the plaintiff, as holding under the same right or title under which the partition is to be made; but it does not authorize the court to pass on the title of a stranger claiming under a different title, adverse to the title under which the partition is to be made, nor can such stranger and his hostile title be brought into such suit, and the conflict between the two hostile rights settled as incident to partition."

Under the statute, as will be seen, the court is authorized to take cognizance of all questions of law affecting the legal title that may arise in the proceedings, and the Supreme Court of Appeals has construed that authority to be confined to questions of title affecting the right to be parties to the action. This statute, as construed by the state court, is readily understood. The common-law rule is modified to the extent that the state court has jurisdiction to pass upon questions of law touching the legal title of any party to the action to the interest he claims in the land to be divided, in order to ascertain if such party is a co-owner in the common subject with a party plaintiff as holding under the same right and title that partition is sought to be made. But there is no jurisdiction conferred by which the court can increase or decrease the degree of an estate, change a life tenure into a fee simple, or invest a title where otherwise none existed. As to these matters the West Virginia statute seems to leave the rules of the common law in regard to partition still in force.

In our case there was no dispute as to the title to any portion of the land. There was no conflicting claim, nor did the court in the decree refer to or determine any such claim. The court decreed partition as sought by the complainants and confirmed the report of the commissioners, and nowhere in the bill filed, in the decree directing partition, in the report of the commissioners, or in the decree of confirmation is there any suggestion that contested rights or conflicting claims of title to or estate in the lands are either raised or passed upon. To our minds it is clear that the chancellor saw, from an inspection of the deed of December 9, 1887, and the certificate attached, the quantum of estate it conveyed and that the partition and confirmation were made in the light of this knowledge. It is our conclusion, therefore, that Mary White and Sterling White, the infant parties to the partition proceeding, are not estopped by the decree therein, nor are they divested of their interest in their mother's land by the adjudication in that suit. Consequently we are of the opinion that the dismissal of plaintiff's bill on that ground was error.

The proposition that Mary White and Sterling White should have availed themselves of the West Virginia statute, which gives a person six months after attaining majority to show cause to modify or set aside a decree rendered against him in his infancy, is without merit. As we construe the decree in the partition case, the decision was not adverse to them, and no existing right of theirs was affected.

There is still a further question raised by the defendant, and that is that Mary White and Sterling White have forfeited to the state whatever interest they had in the lands in controversy because of the fact that the said lands were not entered upon the land books and taxes

paid thereon as required by law. Under the facts as disclosed in the case we do not regard this position as tenable. It was evidently not considered as having bearing by the learned judge of the Circuit Court, because in his opinion dismissing plaintiff's bill he makes no reference to it whatever.

It was error to dismiss appellant's bill on the grounds stated, and the decree entered to that effect should be reversed.

Reversed.