HARRISON v. GILLESPIE et al.

(Circuit Court of Appeals, Fourth Circuit.    February 7, 1913.)

No. 1,111.

1. ACKNOWLEDGMENT (§ 47*)—TAKING IN FOREIGN STATE—OMISSION OF SEAL
  —STATUTE—CURATIVE ACT.
    Code W. Va. 1906, c. 73, § 4, provides that, if an acknowledgment is
    taken before a notary without the state, he shall certify the same under
    his official seal.   Act Feb. 22, 1895 (Laws 1895, c. 10; Code 1906, c. 73, §
    11), declares that when acknowledgment of any deed of a married woman
    has been previously taken by a notary, whether he used his official seal
    or not, the same shall nevertheless be sufficient, unless there are other
    lawful objections.   Held, that chapter 73, § 11, is not limited to acknowl-
    edgments taken in a foreign state where the certificate contains no ref-
    erence to a seal, but is effective to cure the failure of a notary taking the
    acknowledgment of a married woman in Virginia to a deed of real prop-
    erty located in West Virginia which he failed to certify under his official
    seal.
      [Ed. Note.—For other cases, see Acknowledgment, Cent. Dig. §§ 235–
    240; Dec. Dig. § 47.*]

2. JUDGMENT (§ 747*)—PARTITION—CONCLUSIVENESS—STATUTE.
    Code W. Va. 1906, c. 79, § 1, provides that tenants in common shall be
    compellable to make partition, and that the circuit court, in the exercise
    of its jurisdiction in cases of partition, may take cognizance of all ques-
    tions of law affecting the legal title that may arise in such proceeding.
    Code W. Va. 1906, c. 117, § 8, declares that every such record shall be as
    effectual in cases of partition to convey the legal title of the lands in
    controversy to the persons to whom the same is assigned as deeds of
    partition would be if duly made by the parties.   Held, that where a mar-
    ried woman, owning an undivided interest in certain land with her hus-
    band, conveyed her interest to P., and while sui juris suit was brought
    against her, her husband, P., and others for partition, and her interest,
    conveyed to P. by the deed, was set off to him by the decree, she and
    those claiming under her were estopped thereby to thereafter claim any
    interest in such land by virtue of a defect in the acknowledgment of her
    deed to P., which was not made an issue in the partition suit.
      [Ed. Note.—For other cases, see Judgment, Cent. Dig. §§ 1053, 1284–
    1296; Dec. Dig. § 747;* Partition, Cent. Dig. § 314.]

3. JUDGMENT (§ 486*)—PARTITION DECREE—COLLATERAL ATTACK.
    Where a partition decree awarding an interest in the property to a
    cotenant's grantee had not been reversed or set aside by some proper
    method, it could not be collaterally attacked by a suit in equity to set
    aside certain conveyances, on the ground that the cotenant's deed was
    invalid for want of sufficient acknowledgment.
      [Ed. Note.—For other cases, see Judgment, Cent. Dig. §§ 919, 920–923;
    Dec. Dig. § 486;* Partition, Cent. Dig. § 421.]

Appeal from the District Court of the United States for the South-
ern District of West Virginia; Benjamin F. Keller, Judge.

Suit by J. B. Harrison against J. S. Gillespie and others.   Decree
for defendants, and plaintiff appeals.   Affirmed.

Ritz & Ritz, of Bluefield, W. Va., and Cook, Litz & Howard, of
Welch, W. Va., for appellant.

J. W. Chapman, of Tazewell, Va. (Chapman & Gillespie, of Taze-
well, Va., on the brief), for appellees.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Before PRITCHARD, Circuit Judge, and McDOWELL and ROSE, District Judges.

PRITCHARD, Circuit Judge. This is a suit in equity instituted in the District Court of the United States for the Southern District of West Virginia by J. H. Harrison against J. S. Gillespie et al. for the purpose of setting aside certain conveyances hereinafter mentioned. It appears that J. T. Myers died intestate seised of a tract of land, a portion of which is involved in this controversy. The land owned by Myers at his death passed by descent to his eight children, his heirs at law. Minnie J. Moore, one of his heirs, intermarried with John W. Moore, and on the 17th day of December, 1893, she, together with her husband, conveyed to W. P. Payne an undivided one-third of her interest in the lands of her father, situated in McDowell county, W. Va., on the waters of the Dry fork of Sandy river.

This deed was acknowledged by the grantors in the state of Virginia before a notary public of that state, and was duly recorded in Mc-Dowell county, W. Va., but it appears that the notary failed to attach his official seal to the certificate of acknowledgment. Subsequent thereto Henry Beavers and Jesse Beavers, his wife (also a daughter of J. T. Myers, deceased), instituted a chancery suit in the circuit court of McDowell county for a partition of the land of which the said J. T. Myers died seised. All of the heirs at law of the said J. T. Myers, as well as the persons to whom some of them had aliened their interests, were made defendants; among them being John W. Moore and Minnie J. Moore and W. P. Payne. In that suit the circuit court of McDowell county ordered a partition of said lands, and 19.6 acres thereof (being the land involved herein) were assigned to Payne under said deed of December 7, 1893, from Minnie J. Moore and her husband, John W. Moore.

It also appears that on the 16th day of March, 1902, the said W. P. Payne and wife conveyed this tract of land to J. S. Gillespie, who leased the same to Thomas W. Fisher, and he, in turn, transferred his lease to the New River & Pocahontas Consolidated Coal Company, and this company is now in possession of this tract of land. Minnie J. Moore died in the year 1898 intestate, leaving an infant son, Francis Moore, as her heir at law. The appellant claims as purchaser of the interest of the infant at a judicial sale. As shown by the allegations of the bill, this suit was instituted for the purpose of setting aside the deed from Minnie J. Moore and her husband, John W. Moore, to W. P. Payne; also, the deed from Payne and wife to Gillespie; the lease from Gillespie to Thomas Fisher, and the transfer of said lease by Thomas Fisher to the New River & Pocahontas Consolidated Coal Company, in so far as these deeds undertake to pass any greater interest than the curtesy initiate of the said John W. Moore.

At the July rules, 1911, the appellee the New River & Pocahontas Consolidated Coal Company filed its demurrer to the bill, and on the 18th day of October, 1911, J. S. Gillespie demurred to the bill by leave of court upon the same grounds relied upon by the New River & Pocahontas Consolidated Coal Company. On the 18th day of October, 1911, a hearing was had. The court sustained the demurrers and dis-

missed the bill, and judgment was entered accordingly. From this judgment the plaintiff appealed.

[1] Inasmuch as the appellant claims title under Minnie J. Moore, the first question to be determined is as to whether Minnie J. Moore was seised and possessed of these lands at the time of her death. If we should reach the conclusion that she was at that time the owner of the same, it would necessarily follow that she had not been divested of the title by the deed of conveyance which she made to W. P. Payne prior thereto, or the partition proceeding, and the appellant would be entitled to recover. Therefore, did Payne acquire the title to the premises by virtue of such deed or partition proceeding? It is contended by counsel for appellant that this deed was inoperative to pass title, and that its only effect was to vest in Payne the curtesy initiate of the said John W. Moore in the lands in controversy, because the notary public who took the acknowledgment of the said Minnie J. Moore and John W. Moore failed to certify the same under his official seal. This acknowledgment was taken before a notary residing in the state of Virginia, and the appellant insists that, under the West Virginia statute, the acknowledgment of a married woman taken before a notary in another state is required to be certified under his official seal. The last paragraph of section 3077 of the Code of West Virginia (1906) is in the following language:

"If the acknowledgment be before a notary without this state he shall certify the same under his official seal."

The appellant insists that this statute is mandatory, but the appellees insist that it is merely directory; and, further, that even if the certificate were defective on account of the fact that the notary failed to certify the same under his official seal this defect was cured by a statute passed subsequent to the date of the deed. It is not contended that the deed from Minnie J. Moore and husband was improperly executed, nor that it was improperly acknowledged; but it is insisted that, inasmuch as the notary before whom it was acknowledged failed to attach his official seal, the certificate of acknowledgment was fatally defective. It is unnecessary to decide this question. If the deed was invalid, it was cured by the act of February 22, 1895 (Laws 1895, c. 10; section 3086, Code 1906), which reads as follows:

"Where the acknowledgment of any deed or other writing, or the privy examination of a married woman respecting the same, has been heretofore taken by a notary public or justice of the peace, whether he used his official seal or not, or by two justices of the peace in any county in the state of Virginia, prior to the reorganization of the state government thereof, or by any justice out of his district or township, or it does not appear by the certificate of the justice that such acknowledgment or privy examination was taken within his district or township, or county, the same shall be, nevertheless, sufficient, unless there be other lawful objections."

While this statute is broad and comprehensive in its terms, nevertheless, it is argued by counsel for appellant that it was not intended to apply to acknowledgments taken in another state where the certificate contains no reference to the seal and that it only attempts to cure one defect, to wit, the absence of the notary's seal, and refer to the case of Wetmore v. Laird, 5 Biss. (U. S.) 160, Fed. Cas. No. 17,467,

to support such contention. In using the language, "* * * whether he uses his official seal or not," the Legislature obviously had reference to certificates of acknowledgment under his official seal; and, where such certificates were not made and no official seal attached thereto, it was evidently the purpose of this statute, to validate the same. From its provisions it may be inferred that at the time of its enactment the Legislature was of the opinion that certain conveyances of land in that state were invalid owing to the fact that the notaries taking the acknowledgments had failed to certify the same under their official seal. Therefore, it must be assumed that the chief object of this enactment was to validate conveyances of this character. In other words, it was the purpose of the act to deal with certain defective conveyances as a class, and under the circumstances it would be absurd to say that the Legislature intended to validate only conveyances that were acknowledged before an officer within the state, and that the act did not apply to a deed where the acknowledgment was taken in another state. In our opinion it was the purpose of the Legislature to cure any defects in conveyances falling within this class, and that it was intended especially to apply to those conveyances that had been acknowledged before a notary in another state. This is the more reasonable construction to place upon this statute in view of the fact that there was no statute in the state requiring certificates of acknowledgment before notaries taken within the state to be certified under their official seals.

[2] But the foregoing is not the only reason for our conclusion that the decree below was right. Among other things, it is alleged in the bill that:

"* * * On the 19th day of November, 1894, Henry Beavers and Jesse Beavers, his wife, who was a daughter of the said J. T. Myers, brought their chancery suit in the circuit court of McDowell county for the partition of the lands of which J. T. Myers died seised, and in the partition had in said chancery suit the said 19.6 acres, now owned by plaintiff, were assigned and allotted as part of the share of Minnie J. Moore, a daughter, and one of the eight children of the said J. T. Myers, who had intermarried with one John W. Moore, to W. P. Payne, on account of the deed made to the said W. P. Payne by John W. Moore and wife of December 17, 1893."

Minnie J. Moore and her husband were parties to that suit, and neither of them objected to the allotment of these particular lands to Payne in accordance with the deed which they had executed and delivered to him. Section 3180 of the Code of West Virginia (1906) is in the following language:

"Tenants in common, joint tenants, coparceners, shall be compellable to make partition, and the circuit court of the county wherein the estate, or any part thereof, may be, shall have jurisdiction in cases of partition, and in the exercise of such jurisdiction, may take cognizance of all questions of law affecting the legal title that may arise in any proceeding."

Also section 3740 of the Code of West Virginia is in the following language:

"And every such record shall be as effectual, in cases of partition to convey the legal title of such lands to the persons to whom the same is assigned by the report of the commissioners, as deeds of partition would be if duly made by the parties."

The partition in this case was duly certified to the clerk of the county court, and he, in turn, recorded the same, and it thereby became notice to the world of the ownership by Payne of this land. In the suit for partition, as we have stated, Minnie J. Moore and Payne were both parties defendant, Payne claiming (under the deed from Minnie J. Moore and her husband) that he was the owner of one-third of the interest of Minnie J. Moore in the lands which she had inherited from her father, J. T. Myers, deceased. They both claimed under a common source, and it was necessary for the court to determine the respective interests of all the parties before a partition could properly be had. That this was done is evidenced by the fact that the appellant in his bill, among other things, alleges that this particular tract in that proceeding was allotted to Payne " * * * on account of deed made to W. P. Payne by John W. Moore and wife December 7, 1893." Under the circumstances of this case, it must be assumed that the court determined as to the exact interest Minnie J. Moore had in these lands in view of the fact that it allotted to Payne every foot of land contained in the deed which had been made to him by her anterior to that date.

The Supreme Court of West Virginia in the case of Smith v. Vineyard, 58 W. Va. 98, 51 S. E. 871, held that, under the provision of the statute relating to partition, the circuit court had the power to pass upon all conflicting claims to title in suits where parties are required to make partition. Judge Coxe, who delivered the opinion of the court, discussed this phase of the question, and, among other things, said:

"This enabling provision of our statute has many times been passed upon by this court. At first glance there seems to be an apparent conflict in our decisions, as to the extent of the power of a court of equity to pass upon conflicting claims to real estate in a partition suit, which upon closer examination disappears. Our earlier cases appear to give a very broad interpretation to the statute in this regard. In Hudson v. Putney, 14 W. Va. 561, it was said that under this section, when the title is doubtful, a court of equity should decide it, observing the general rules of practice in equity for ascertaining facts, either by a jury or otherwise, as may be most proper. In Moore v. Harper, 27 W. Va. 362, it was said that, under this section, a court of equity in a suit for the partition of lands may take cognizance of all questions of law affecting the legal title that may arise in the proceedings, such as removing a cloud from the title or passing upon an adverse claim to the land. These cases seem broad enough to enable a court of equity to pass on and determine the claim of a stranger holding a wholly adverse and hostile title, but our later cases, reviewing the former decisions, have not so construed them. Carberry et al. v. W. Va. & P. R. Co., 44 W. Va. 260 [28 S. E. 694]; Cecil et al. v. Clark et al., 44 W. Va. 659 [30 S. E. 216]. In the latter case Judge Brannon, delivering the opinion of the court, said, in relation to the construction given the statute by the cases of Hudson v. Putney and Moore v. Harper, that 'this is broad enough in words to allow a stranger's title to be tried, but it does not mean that an adverse claim to the same title may be passed upon.' In the opinion in Carberry et al. v. W. Va. & P. R. Co., it was said: 'It is needless to expand here upon the proposition that equity will not entertain a bill which is but an action of ejectment, and thus try adverse title, unless it be incidental to relief under a known head of equity jurisdiction.' Under this provision of the statute, and under our decisions, as we understand them, the circuit court has the power to pass upon questions of law affecting the legal title only in the exercise of its jurisdiction of partition. If it appears, as a jurisdictional fact, in a suit of equity for

partition, that the party or parties asking for partition and the party or parties against whom partition is asked are tenants in common, joint tenants, or coparceners in the real estate sought to be partitioned, and as such compellable under the statute to make partition, the circuit court has power incident to its jurisdiction to pass upon all conflicting claims to the title to such real estate of the parties so compellable to make partition arising in the suit. If the jurisdictional fact, viz., the existence of one of the forms of cotenancy mentioned appears, the jurisdiction of the court is not defeated by the claim of one or more of the defendants that the fact does not exist. One of the defendants may claim the whole of the real estate sought to be partitioned, and may claim to have ousted the other and to be in sole possession, yet, if the fact appears that one of the forms of cotenancy mentioned actually exists, the court may pass upon the conflicting claims to title of the cotenants as long as the plaintiff's right of entry is not barred by the statute of limitations. Cecil et al. v. Clark et al., supra; Hudson v. Putney, supra; Carberry et al. v. W. Va. & P. R. Co., supra; Davis v. Settle, 43 W. Va. 17 [26 S. E. 557]; Pillow v. Southwest Improvement Co., 92 Va. 144, 23 S. E. 32 [53 Am. St. Rep. 804]; Code, c. 79, section 1."

Also in the case of Croston v. Male, 56 W. Va. 214, 49 S. E. 139, 107 Am. St. Rep. 918, the Supreme Court of West Virginia, in passing upon this question quoted with approval Childers v. Loudin, 51 W. Va. 559, 42 S. E. 637, and said:

"It is the duty of the court before decreeing a partition of lands to judicially determine the rights of the parties and failure to do so is ordinarily error. Manifestly it is more important in the case of a sale than in that of a division in kind for the parties interested ought to know their rights, so as to be able to protect them at the sale, as in the case of creditors interested in property about to be sold. But even where partition is to be made it ought to be done. Freem. on Coten. & Par. § 518, says the interlocutory decree, determining the interests of the parties, furnishes the basis upon which the commissioners are to proceed."

Although the proceedings in the partition suit and the decree authorizing the partition of the estate of J. T. Myers, deceased, were not filed as exhibit with the bill in this case, yet we have before us the allegation in the bill to which we have referred in which it is stated that "these lands were allotted to Payne in that proceeding."

Section 2962 of the Code of W. Va. (1906) was in force at the time of the partition suit, and contains the following provisions:

"A married woman may be sued without joining her husband in the following cases:

"(1) Where the action concerns her separate property.

"(2) Where the action is between herself and her husband.

"(3) Where she is living separate and apart from her husband.

"And in no case need she prosecute or defend by guardian or next friend."

Minnie J. Moore was sui juris at the time the suit was instituted, and, being a party thereto, she was thus afforded an opportunity to assert any claim of title she may have had in this tract of land against Payne. However, it does not appear whether at that time she asserted title to the lands in controversy but this is immaterial.

Under the decisions of the Supreme Court of West Virginia, construing the statute relating to partition, W. P. Payne, by virtue of the allotment in the partition proceeding, acquired the legal title to the lands in controversy; and the title thus acquired was as good as if all the parties to the partition suit had joined in executing the same. Mr. Washburn thus states the doctrine:

"Where partition has been made by law, each partitioner becomes a warrantor to all the others, to the extent of his share, so long as the privity of estate continues between them. And, inasmuch as a warrantor cannot claim against his own warranty, no tenant after partition made can set up an adverse title to the portion of another for the purpose of ousting him from the part which has been parted off to him. When partition has been· made, the tenant, to whom a part has been set out, is regarded in law as a purchaser for value of the same." Washburn, R. P. 723.

Also the case of Carter v. White, 134 N. C. 466, 46 S. E. 983, 101 Am. St. Rep. 853, is very much in point, the second syllabus being in the following language:

"A judgment in a partition proceeding determining the respective interests of the parties thereto is binding on said parties as against an after-acquired title."

[3] Further, this title is good until the decree in that suit is set aside or reversed by some proper method. The circuit court being a court of general jurisdiction, its decrees import verity, and cannot be attacked collaterally. If the decree complained of was erroneous, it could have been reversed on a bill of review or by appeal taken within the time allowed by law. This was not done, and we are therefore of the opinion that the proceeding in that case is not open to attack or impeachment in this suit.

In the case of Gillespie v. Pocahontas Coal & Coke Co., 91 C. C. A. 494, 163 Fed. 992, this question was discussed at some length. While the facts in that case differ from those in the case at bar, a careful re-examination of the West Virginia decisions constrains us to say that we do not feel bound by anything that may have been said in that case that is in conflict with the views herein expressed.

For the reasons stated, the decree of the lower court is affirmed.

Affirmed.