# CHARLESTON.

WHITE, *Committee,* v. MOONEY.

Submitted November 25, 1913.   Decided December 2, 1913.

DEEDS—*Mental Capacity—Sufficiency of Evidence.*

> A case involving no new principle, in which the evidence is held not sufficient to overthrow a deed on the ground of alleged want of mental capacity of the grantor, following *Black* v. *Post,* 67 W. Va. 253; *Teter* v. *Teter,* 59 W. Va. 449; and *Delaplain* v. *Grubb,* 44 W. Va. 612.

Appeal from Circuit Court, Boone County.

Bill by Sidney White, Committee, etc., against W. E. Mooney. From decree for plaintiff, defendant appeals.

*Reversed and Bill Dismissed.*

*Frank P. Murphy* and *John P. Hager,* for appellant.

*Chas. L. Estep* and *W. E. R. Byrne,* for appellee.

WILLIAMS, JUDGE:

W. E. Mooney has appealed from a decree of the circuit. court of Boone county made on the 17th February, 1912, cancelling a deed made to him by Paulina Miller conveying a tract of 397 acres of land, the grantor retaining possession during her life. The case turns upon the grantor's mental capacity at the date of the deed, April 11th, 1910. The consideration recited is services and labor performed, and to be performed, by Mooney for the grantor. Mooney was to maintain and take care of the grantor during her life, giving her proper care, nursing and medical attention. Mrs. Miller was a widow, about seventy-four years of age, and by her frugality, industry and careful attention to business she had accumulated and saved a good deal of money, in addition to the tract of land in controversy. Her children had died unmarried and without issue, and her husband too had died about fifteen years prior to 1910. Mooney had been living on her place, in a house erected for him, only a few feet from her own dwelling house, for about fourteen years, nearly ever since her husband's death. She was partially paralysed in the fall of 1909, and was in feeble health, having almost lost the use of her right arm and leg. Her power of speech was also much affected and it was often difficult for her to make herself understood. Her counsel urge that, at the time she executed the deed, she had not sufficient mind to know what she was doing. She lived at Chap, Boone county, about nine miles from Madison. The deed was executed at the Martin Hotel in Madison, in the presence of F. C. Leftwich, M. A. Byrnside and W. E. Mooney, while she was on her way to a sanatorium in Louisville, Kentucky. Mr. Leftwich had been her attorney-at-law and her legal adviser for several years. Dr. R. L. Hunter and Mr. Mooney accompanied her to Louisville, and placed her in the care of Dr. Pope, in his Sanatorium, where she remained about five months. She was then brought back to her own home in Boone county by Mr. Leftwich. About twenty witnesses have testified for plaintiff that, in their opinion, she was not competent to make the deed; and about twelve for defendant, that she was competent. That she did execute the deed is abundantly proven by a number of

witnesses who were present at the time, and the fact is not denied. So that, the principal question in dispute is, was she mentally capable at the time. The legal presumption in favor of her mental capacity casts the burden of proving the want of it upon her. *Black* v. *Post,* 67 W. Va. 253, and *Delaplain* v. *Grubb,* 44 W. Va. 612. After a careful reading, and consideration of all the testimony, pro and con, giving the opinions of witnesses such weight as the facts and circumstances related by them, show their opportunity to judge of her mental capacity, entitles them to, we are forced to conclude that a decided preponderance of the evidence proves that she was mentally competent to make the deed. True plaintiff has produced the greater number of witnesses; but many of them showed but little opportunity to judge of her mental condition at the time in question, and a number of them admitted that, at times, her mind was better than at other times. On the other hand a number of witnesses for defendant testify about matters of business attended to by her and things spoken of by her, concerning which she alone knew, she giving the reasons why she wanted them adjusted. Such evidence proves beyond question that she possessed, at that time, both memory and reason, and that she then knew well what she was doing. Her mind may have been, and no doubt was, impaired by disease; but, that she knew what she was doing and willingly executed the deed, we have little doubt. That she possessed a will and exercised it, is shown by her refusal to contribute to the building of a church in Madison, then in process of erection. She was solicited by Mr. Byrnside to make such contribution and declined, saying that she would perhaps do so on her return from the hospital.

It would require unnecessary time and labor to detail all the testimony, or even the material parts of it, and it would have no other effect than to encumber the reports with useless matter which, in all probability, would never be read by any-one other than the attorneys of record who are already familiar with it. Cases of this kind seldom serve as precedents; they depend upon their own peculiar facts and circumstances, and rarely involve any new or unsettled principles of law. Because of their nature they can never, except in the rarest instances, serve as precedents. Therefore, it is enough to say, that we

have been influenced in our decision of the case, more by the undisputed testimony of witnesses in relation to statements made, and things done, by Mrs. Miller, at and about the time she executed the deed, than by the conflicting opinions of witnesses regarding her mental capacity. Her mind may have been enfeebled by age and disease, and her actions occasionally strange and eccentric, and we have no doubt they were, as when she quarreled with Mooney; still, if she knew the nature and effect of her deed, it must be sustained as her voluntary and rational act. *Black* v. *Post, supra,* and *Delaplain* v. *Grubb, supra.* There is no evidence whatever that undue influence was exerted to cause her to execute the deed. She was physically feeble and talked with difficulty, frequently being unable to speak the word she wanted to use. She would sometimes say "I know it but can't tell it"; but she fully understood all that was said to her. She sent for Mr. Leftwich and he came to the Martin Motel where she was stopping in Madison. She was then helped up stairs to her room; and, in the presence of a number of witnesses, the matter of executing the deed was talked over, before it was prepared. It was written at Mr. Leftwich's office on the next day, and brought to her and read over to her. She could not use her arm to write, and she requested Mr. Byrnside to sign her name for her and he did so; she then made her mark, and acknowledged the deed. She requested Mr. Leftwich, at the same time, to attend to certain other important business matters for her, and gave him a written power of attorney to do so. In the January next preceding her going to Louisville, several months after she was paralysed, she made a sale of other land to Crawford and Ashby. A settlement with them was a part of the business she wanted Mr. Leftwich to attend to. She requested him to pay a bill she owed Dr. Godbey, and not to pay a claim made against her by Dr. Hatfield, giving as her reason that she had not sent for him, but that Sidney White had, and that White ought to pay him. While in Madison she sent for Sidney White and collected four hundred dollars which he owed her. She also attended to business after her return from Louisville. She related to one of the witnesses how she had tried to get an old lady nurse at the sanatorium to write to Mr. Leftwich to come for her, and she refused to

do so, fearing that she would lose her position, but said the old lady told her of a girl nurse who would likely write the letter for her, and she said she then sent for the girl and got her to write the letter. These facts and circumstances which are clearly proven, convince us that Mrs. Miller possessed sufficient mind to make the deed, and that it is perfectly valid. She appears to have been easily provoked and possessed a violent temper. Occasionally she threatened to do violence to Mooney, when in a fit of temper; and, in March, 1911, he swore out a complaint of lunacy against her, and she was adjudged insane and a committee appointed for her. But bond was given and she was not taken to the asylum. This occurred after she had brought the present suit, and nearly a year after she had executed the deed in question. It does not disprove that she was sane and competent when she made it. After a committee was appointed the suit proceeded in his name.

It is proven, and not denied, that after her husband's death, she solicited Mooney to come and live on her place and take care of her and her property, stating that she had tried to get certain ones of her relatives to do so and they had refused, promising to deed Mooney her land to take effect at her death; that in consideration of her promise he came, and has taken care of her and her farm, and has also assisted in the management of a small mercantile store which her husband had conducted and which she continued to conduct after his death. In the deed she was careful to retain a life estate in the land; and, in executing it, we think, she was carrying out her agreement made with Mooney years before. She is proven to have had a strong will and much business ability before she was partially paralysed; and while it must be admitted that her mind, at the time she executed the deed, was not as vigorous as it had been, still we do not think it was impaired to such a degree as to destroy her will and incapacitate her to make a deed.

The deed was not turned over immediately to Mooney, but was retained for a while by Mr. Leftwich; and counsel for Mrs. Miller insist that the essential element of delivery is not proven. Mr. Leftwich explains, satisfactorily, why the deed was not handed to Mooney at once. He says that Mrs. Miller

tried to explain something to him at the time, which he could not understand, because of her difficulty in talking; that he thought perhaps it related to some matter in the deed. But he says that he remarked to her in the presence of Mooney, that he would hold the deed, and if she did not get better, he would hand it to Mooney in a short time. She understood this, and made no objection to it. It authorized him to hand the deed to Mooney; and, so far as plaintiff is concerned, delivery of the deed was made at the time she signed and acknowledged it. Leftwich simply picked up the deed when the acknowledgment was completed. It was not put in his hands to hold for any length of time, or to be delivered only on condition. "If parties meet to make a deed and read, sign and acknowledge it, without reservation, this amounts to delivery." *Adams* v. *Baker*, 50 W. Va. 249.

Mooney has been rendering services in consideration of the deed for fourteen years or more; and the grantor can not now prevent him from carrying out his contract to take care of her in the future, and then avoid her deed on the ground of failure of consideration. She can not thus take advantage of her own wrong.

This case is very similar to the case of *Black* v. *Post, supra;* and it is controlled by the principles announced in that case and in *Delaplain* v. *Grubb, supra,* and *Teter* v. *Teter,* 59 W. Va. 449.

The decree appealed from will be reversed and a decree entered here dismissing plaintiff's bill.

*Reversed and Bill Dismissed.*