# CHARLESTON

ORUM *et al.* v. ROSE *et al.*

Submitted February 25, 1914.    Decided April 21, 1914.

PARTITION—*Fraud and Undue Influence—Burden of Proof.*

 A case depending upon the evidence, and governed by the cases of *Delaplain* v. *Grubb,* 44 W. Va. 612; *Teter* v. *Teter,* 59 W. Va. 439; *Black* v. *Post,* 67 W. Va. 253; and *White* v. *Mooney,* 73 W. Va. 304, 80 S. E. 844.

Appeal from Circuit Court, Marshall County.

Partition by Robert L. Orum and others against Margarite Rose and others. From a decree for defendants, plaintiffs appeal.

*Affirmed.*

*Martin Brown* and *D. B. Evans,* for appellants.

*Frank A. McMahon,* for appellees

WILLIAMS, JUDGE:

Plaintiffs have appealed from a decree denying them relief in a suit brought to partition lands to which they claim title as heirs of their mother Mary Orum, deceased. The defendant Margaret Rose is their sister, and claims to be sole owner of the lands by grant from her mother. By deeds bearing date on the 16th of March, and 29th of July, 1909, respectively, Mrs. Orum conveyed to her daughter Margaret Rose the real estate in question, consisting of two or three lots of ground in and near to the town of Benwood. Plaintiffs attack these deeds on the following grounds: (1) That the deeds were procured by fraud and undue influence; and (2) that the grantor had not sufficient mental capacity to execute them.

The case turns altogether on the proof which we think overwhelmingly supports the finding of the chancellor. Notwithstanding the burden is on plaintiffs to establish fraud or undue influence, there is entire lack of evidence to prove it. On the other hand, the due execution of the deeds is proven by the deposition of Chas. R. Deignan who wrote them and, as notary public, took the acknowledgments thereto of Mrs. Orum. He prepared the deeds pursuant to Mrs. Orum's request, saw her sign them and took her acknowledgments. He identifies her signature to the original deeds which were produced when his deposition was taken. He proves the payment of the nominal consideration of $10, recited in each deed, and also the delivery of the deeds to the grantee. His testimony is not contradicted or shown to be inconsistent with any established fact in the case. He had been acquainted with Mrs. Orum for some years before, and attended to a good deal of business for her. One of the deeds was not recorded until nine or ten days after Mrs. Orum's death. This circumstance might arouse suspicion, but is not sufficient to overcome Deignan's testimony that the deeds were delivered to Mrs. Rose at the time they were acknowledged. From the original deeds brought up as a part of the record, it appears that, in recording the deeds in the county court clerk's office, the clerk mis-

took the name of the notary public who took Mrs. Orum's acknowledgment to be Deegan instead of Deignan. The clerical mistake does not affect the deed or its recordation.

A number of witnesses testified that Mrs. Orum had expressed her intention to leave her land to Mrs. Rose. Prior to executing the deeds she had executed two or three wills, in each of which she had devised the lands to her daughter, and had made some small bequests of personal property to her other children. Deignan testifies that she thereafter decided to convey the land to her daughter by deed rather than by will, to avoid litigation over it after her death. Her personal property amounted to only $244.45 after payment of debts. Mrs. Rose was her mother's favorite child and lived for many years with her. She was a member of the same church with her mother and her other children were not. These are some of the facts and circumstances shown to exist which may have influenced Mrs. Orum to convey all her land to her daughter. The law gave her a right to convey it to whom she pleased.

Comment on the evidence respecting the grantor's mental capacity to transact business is scarcely necessary. It is overwhelmingly in favor of her capacity. Only four or five witnesses expressed an opinion that she was not mentally capable of transacting important business. On the other hand, twenty-five or thirty witnesses, many of whom had important business transactions with her, within a very short time of her death which occurred on the 27th February, 1910, testify to her competency. Some of them were her near neighbors, and, because of their intimate acquaintance and frequent intercourse with her, had good opportunity to form reliable opinions on the subject. One of such witnesses is a mechanic who built a house for her, and another is a wholesale grocer in the city of Wheeling, from whom she bought supplies for a small retail grocery store at Benwood which she conducted and managed herself up to the time of her death. Her husband died in November, 1908, and she was appointed to administer his estate. In April, 1909, she made a trip to Hot Springs, Arkansas, in company with Mr. and Mrs. Cusack, and, while waiting in St. Louis some hours for train connection, she went alone sight-seeing in the city. During that trip she visited her sister in Cherryvale, Kansas, and returned

thence to her home alone. The proof in this case, supporting the deeds, is very much stronger than it was in any of the following cases: *Delaplain* v. *Grubb*, 44 W. Va. 612; *Teter* v. *Teter*, 59 W. Va. 449; *Black* v. *Post*, 67 W. Va. 253; and *White* v. *Mooney*, 73 W. Va. 304, 80 S. E. 844.

The decree is affirmed,

*Affirmed.*