# CHARLESTON.

MARY J. SPRIGGS *et al. v.* JAMES T. McCREERY *et al.*

Submitted October 5, 1920.   Decided October 12, 1920.

1. ESTOPPEL—*Partitioners, Receiving Allottments, Not Entitled Years After to Repudiate Partition.*

  If after a decree of partition is entered in a suit not brought for that purpose but by a creditor of one of the partitioners to subject his interest in the land partitioned to the payment of his debts, the several partitioners to whom allotments were so made take and hold in severalty the parts allotted to them respectively and thereafter sell, convey, and lease the land with reference to such partition, equity will not suffer them or their successors in title, years afterward, to repudiate such partition. (p. 213).

2. TRUST—*Agent Fraudulently Acquiring Title to Principal's Land Holds in Trust.*

  Where an agent of one of such partitioners, during the agency, fraudulently and by false and fraudulent represen-

tations, and without consideration, acquires deeds and releases from him or others of a portion of the land allotted to his principal, the subject of his agency, he will be treated as holding such land in trust for his principal, and required as such trustee to account for and convey the same to him. (p. 215).

(WILLIAMS, PRESIDENT, absent.)

Appeal from Circuit Court, Raleigh County.

Suit by Mary J. Spriggs and others against James T. Mc-Creery and others for partition and to set aside deeds as clouds on plaintiff's title. From a decree dismissing the bill as to defendants McCreery and Fuller, plaintiffs appeal.

*Reversed; decree for plaintiffs.*

*C. M. Ward* and *James H. Guthrie,* for appellants.

*Bumgardner & Preston, W. H. Sawyers* and *Brown, Jackson & Knight,* for appellees.

MILLER, JUDGE:

This is a suit for partition brought by plaintiffs as heirs of the late Jackson Spriggs, who died in 1875, against the defendants, the principal object of which is to divide and partition among those entitled thereto a tract originally described as containing four thousand acres, but as claimed by plaintiffs containing by actual survey fifty-five hundred acres, situated in Raleigh County, and as incident thereto and necessary to a final disposition of the cause, to have set aside as fraudulent and void and as clouds upon plaintiffs' title; *first,* a deed from Joseph Soission and wife to A. S. Fuller, dated December 1, 1896, purporting to convey to the grantee two thousand one hundred acres, part of the fifty-five hundred acre tract; *second,* a deed from A. S. Fuller and wife to James T. McCreery, dated December 15, 1896, purporting to convey to the grantee therein the said two thousand one hundred acres.

And likewise and for the same reason to have set aside and removed as clouds, *first,* a deed from James T. McCreery to A. S. Fuller, dated October 13, 1897, purporting to convey to the latter six hundred acres out of said larger tract; *second,* a deed from A. S. Fuller and wife to Frank M. Fuller, dated February 3, 1898, purporting to convey to the grantee therein

said six hundred acres; *third,* what purports to be a deed from James S. Spriggs and others to James T. McCreery, dated March 8, 1907, purporting to convey to said McCreery the interest of the grantors therein in said two thousand one hundred acres.

The decree below dismissed the plaintiffs' bill as to the defendants McCreery and Sarah M. Fuller, thereby adjudicating that the fifteen hundred acres of the land taken off the northwestern end or side of the tract claimed by plaintiffs and covered by said deeds, did not belong to the partitioners and that they were not entitled to have partition of that part of the land so claimed by them.

The bill and proceedings show that the land of which partition is sought was acquired by plaintiffs' ancestor Jackson Spriggs from John Stewart and wife by deed of August 9, 1870, being described as one undivided third part of a tract of twelve thousand acres, and being parts of lots 5 and 9 of the Moore and Beckley survey, and which land was in 1871 returned delinquent, and later, in 1873, sold in the name of Charles Stewart's heirs, and purchased by one George C. Bloomer; and it is alleged and proven that before the expiration of a year from the date of sale Jackson Spriggs redeemed from Bloomer his interest in said land, as did also Soission and Wilhelm their interests therein, leaving Bloomer possessed of the remaining interest in said tract. The land so returned delinquent and sold, and purchased by Bloomer in 1873, was a tract of about 15,733 acres, and considerable stress is laid by counsel for appellees upon the fact that the sales to Spriggs, and Soission and Wilhelm were of one undivided third of 12,000 not of 15,733 acres, but in the view we take of the case and the conclusion we have reached, this fact is not very important.

In order to reach a correct conclusion upon the conflicting claims of appellants and appellees, we think it unnecessary to go back into the chain of title further than the decree of partition relied on by appellants, pronounced in 1880, in the suit of Francis and Dushane v. John Wilhelm and others, a suit by plaintiffs as creditors of said Wilhelm to subject his interest

in said land to the payment of their debts. Strictly speaking that was not a partition suit; and most of the papers therein appear to have been lost, but the decrees therein have been produced in evidence, as well as a copy of the plat of the survey made therein for the purpose of such partition. It is considered by counsel that as that was not a suit between co-tenants or co-parceners for partition, but a creditors' suit, the court was without jurisdiction to decree partition, and that the decree was void, and that the immediate parties now engaged in the controversy may ignore that partition decree and return for a solution of the conflicting claims to the rights of their predecessors under the original contracts of purchase by which the undivided interests in the 12,000 acres were acquired from Stewart, and Bloomer, the tax purchaser; this upon the principles adjudicated and applied in *Hoback* v. *Miller,* 44 W. Va. 635, and *Hull* v. *Hull,* 26 W. Va. 1. The holding of these cases and others like them is simply that partition is only compellable by those entitled to partition. In those cases it was decided that a widow entitled to dower could not sue and have partition made between the parties rightfully entitled to partition.

But we are here confronted with the fact that in that creditors' suit in 1880, the court determined by its decree that before the interest of the judgment debtor Wilhelm should be sold, a partition of the land should be made between the owners, wherefore on June 6, 1879, a decree was entered adjudging and ordering that three commissioners, of whom defendant James T. McCreery was one, being first duly sworn, should proceed to lay off and divide the real estate described in "Exhibit D," having regard to quantity and quality, and assign one of the said three parts to George C. Bloomer, one to Joseph Spriggs' heirs, and the other to John Wilhelm and Joseph Soission, and to divide the latter third equally between the owners thereof. Said decree pronounced in said cause, on June 9, 1880, upon the incoming of the report of the commissioners, James A. Hutchinson, surveyor, James T. McCreery, and Robert Warden, unexcepted to, was that the report be confirmed, it appearing from said report that the commissioners allowed to Jackson Spriggs' heirs 4000 acres off the south

end of said land, and to John Wilhelm and Joseph Soission 4000 acres next adjoining the lot assigned to said Spriggs' heirs, and the remainder, containing about 7733 acres, and being the northern and western portion thereof, to George C. Bloomer, and that they had made the division line between the Spriggs heirs and Wilhelm and Soission: "Beginning at the south side of the original line of lot No. 9 at the head of Seven Mile branch a branch of Pinch Gut a corner to Jas. Meadows, thence running North 25° East through lot No. 9 to the inner section of the out line on the north side of said lot and the division line between Wilhelm and Soission and George C. Bloomer, beginning on the south side of lot No. 5, 60 poles west of Robert Scott's corner on said line, and thence running North 50° East to Glade Creek near William Kidwell's lower corner, and thence down Glade Creek to the intersection of the original line." And the decree also shows that the division of the tract allotted to said Soission and Wilhelm, by boundaries designated and as described on the plat, had been made in accordance with the direction in the decree of reference.

After this decree, according to the pleadings and proofs, each of the partitioners took possession of the parcels allotted to them respectively and acquiesced in the partition thus made, without complaint from anyone then related to the title, for more than fifteen years. Indeed no one except the defendants not parties to that partition, up to the time of this suit, ever questioned the rights of the partitioners to the particular tracts awarded them. They all elected to take and hold in severalty according to the decree. They caused their respective tracts to be separately taxed and paid taxes thereon; they each leased the lands or parts thereof in severalty and took the rents, issues and profits thereof in the same way, and they and their successors in title have continued to do so down to the date of this suit, disturbed only by the defendant McCreery in the manner alleged in the bill, after he became the trusted and confidential agent and friend of plaintiffs for looking after their lands, paying taxes thereon, renting the lands and collecting the rents, and also for the purpose of making sale thereof.

The bill alleges that defendant McCreery became such agent

about the year 1890, and continued therein until the year
1915, shortly before the institution of this suit in 1917. And
though McCreery in his answer, unsworn to, distinctly denies
such agency, his own evidence admits the agency, substantially
as alleged, and his letters and the documentary evidence, as
well as the sworn testimony of numerous witnesses, establish
the fact beyond any question.

The bill alleged and the answer admits, that as partitioned
in 1880, the dividing line of plaintiffs land as laid down on
the plat of the surveyor ran from what is shown thereon as
the western corner of James Meadows, on the south line of
said lot No. 9, thence running N. 25° E. a straight line to
the north side of said lot. That McCreery knew this line and
its location, beginning at said corner, is not only admitted by
him but proven by his letters and by the leases he made as
agent for plaintiffs, one of which leases covered a large farm
within the boundary of the 1500 acres, to which he and the de-
fendant Fuller are now laying claim. And that McCreery as
agent for plaintiffs took and had charge of all the lands claimed
by plaintiffs up to said partition line from the beginning of
his agency to about the time it terminated in 1915, there is
no room for controversy, though in the meantime, as alleged
and proven, he began as early as 1895, perhaps in 1893, to
lay plans to acquire title surreptitiously to the 1500 acres in
controversy. In 1893, as the record shows, he caused a survey
of the plaintiffs' tract to be made by Milton Curtis, a sur-
veyor, which disclosed that there were contained in the bound-
ary about 5500 acres instead of 4000 acres as reported by the
commissioners in the partition in 1880. Learning of this larger
acreage he requested the surveyor to run a line parallel to the
line run in 1880, beginning at or about the southeastern corner
of the Meadows tract, so as to cut off the 1500 acres of the
lot as partitioned and leave only 4000 acres. Curtis would not
or did not do this, and later, in 1895, McCreery procured an-
other surveyor, Lavender, to run or protract this new line,
so as to cut off from those he was representing as agent the
1500 acres. After doing this, about December 1, 1906, he
personally secured from Soission and wife, for a nominal con-

sideration, a quitclaim deed to A. S. Fuller for the 1500 acres, and on December 15, 1906, had Fuller and wife, for a nominal consideration, execute to him a deed without any kind of warranty, for the same land; and on October 13, 1907, McCreery reconveyed to Fuller an undivided six hundred acre interest in the southern part of the 1500 acres, the deed reciting a consideration of $20.00 and other valuable consideration. The manifest purpose of McCreery in procuring the deed from Soission and wife was to extinguish any claim they might have as owners of the tract partitioned to Soission and Wilhelm adjoining plaintiffs' land; and in procuring the deed from Fuller and wife the evident purpose was to relieve the 1500 acres from any possible claim Fuller might assert as owner of the 7733 acre tract allotted to Bloomer by the decree of partition. The purpose was not to correct any supposed error in the partition made in 1880, if any, but to clear the way for McCreery to get 1500 acres for nothing, or practically so, that had been allotted to and held by those with whom he stood in the relation of principal and agent. Having succeeded so far with his purpose, he then set out to get from his principals a quitclaim deed for the same land. They were then living, most of them, outside the state, and none of them knew anything about the land, unless it was Alexander R. Spriggs, one of the heirs, a lawyer it seems, and at one time attorney in fact for his coheirs, but who for the greater part of the time had been out of the state, a part of the time in Iowa. To all of them he falsely represented the facts and succeeded, in March 1907, in inducing James C. Spriggs and wife, William Wallace and Margaret B. and Anna Vance, his daughters, and James Walker and Elvira J. Walker, his wife, a part of the heirs of the said Jackson Spriggs, to execute to him without consideration, except a mere nominal one, a quitclaim deed for said 1500 acres. This deed, however, was not executed in person by Anna M. Vance, but McCreery procured her sister Margaret to sign the same as attorney in fact, knowing she had no authority, and afterwards wrote Mrs. Vance, when she demanded a return of the deed, that it had gone to record and could not be withdrawn, and that she had better procure from her sister a power

of attorney in order to protect herself. To procure this deed McCreery, about February 14, 1907, addressed letters to the heirs, and saw at least one of them in person, representing to them that it was necessary to sign the deed to clear up the title preliminary to a contemplated sale thereof; that. the surveyor's mistakes had included 1500 with the 4000 acres, which had not been discovered for several years thereafter, which had complicated matters; and to one of them at least he said: "There are some parties trying to disturb the title on account of this mistake in the surveyor," which, he said, "I will explain fully to you in my next letter." When Mrs. Walker, one of the heirs, received the letter, she answered, proposing to send her son-in-law out to look into the matter. McCreery protested that this was wholly unnecessary. And on one occasion, when a partition of the 4000 acres was suggested, he protested that this was unnecessary and would complicate things. On December 30, 1896, McCreery wrote Alexander R. Spriggs, then in Iowa, relating to a sale of the property: "I am offering the 4000 acres for I know there will be trouble about the part that was cut off from Dushane and we cannot get a clear abstract of title. Fuller and Bloomer claim. that part but they cannot get it, for it belongs to Dushane. * * * So make a deed for the 4000 acres at once as directed and I will notify you in what bank to deposit it as soon as the deed is ready. * * * I can sell the other part as soon as it is decided who it belongs to." The purpose here disclosed was to induce the Spriggs heirs to make a deed for 4000 acres, exclusive of the 1500 acres, and thus commit themselves to that boundary. At the time McCreery wrote that letter, he had already procured the deed for the 1500 acres from Soission and Fuller, and from Fuller and wife to himself, and had the same on record. To give some color to his pretentions that persons were stirring up trouble about the title of the Spriggs heirs, he introduced a letter purporting to have been written to him by Col. James H. Huling, who had an option to buy the land, dated April 12, 1907, in which he purports to have said: "In our investigation of the title to the 4000 acres of Jackson Spriggs heirs we find that by survey (only) that

there has been tacked on to the Spriggs land 1500 acres of land or more or less by incompetent survey. We find the 1500 acres is part of the unsold land of Col. A. S. Fuller and belongs to him or his assignees and the Spriggs heirs have no claim on it except a color of title which may affect the title to the 4000 acres unless you at once get a quit claim from the heirs, this I advise you to do at once, or our people will be compelled to drop the 4000 acres out of the purchase." At the date of this letter McCreery had already procured from Fuller a deed for his supposed interest, and had also the quit-claim deed from part of the heirs of Spriggs, which is sought to be set aside by this suit. We can not say it is so, but this letter of Huling's has many earmarks of a fabrication, or was procured by McCreery for the purpose of bolstering up his fraudulent scheme and design to get from his principals this 1500 acres of land, then become very valuable, for no consideration whatever. Another piece of evidence showing intent to defraud is the suit of Sehon, a Stewart heir, against Bloomer, the tax purchaser, to set aside the tax deed. McCreery was made a party to that suit, and in his answer he denied the charge in the bill that the two tracts partitioned to the Spriggs heirs and to Soission and Wilhelm, and the other tract allotted to Bloomer, contained much larger acreage than therein mentioned. In that suit McCreery procured counsel to appear and to file an answer for the Spriggs heirs, which he relies on in this suit as an estoppel, in which they are made to admit that on March 8, 1907, they made a deed to McCreery conveying said 1500 acres to him out of said 4000 acres so conveyed to them by Bloomer. Though named as parties to the bill, they knew nothing of it, and counsel was not authorized by them to make any such admission. But as there was no issue in that suit between them and McCreery, he can not successfully rely on that admission nor the decree dismissing the Sehon bill, as an estoppel upon them to contravene his rights to the 1500 acres.

There are so many other matters showing McCreery's fraudulent purpose that they can not be detailed here. Enough has been said to show his relationship of agency and his fraudulent design upon plaintiffs' property. Much stress is placed by

him in defense upon the fact that Alexander R. Spriggs gave some attention to the land, and that in some letters written by him to one Scott, who had called his attention to the fact that an effort was being made to rob him and the other heirs of a part of the land, and proposing to assist them, not naming anyone engaged therein, and in which Spriggs said in substance that the matters were in the hands of McCreery, and that his people had their complement of the acreage and were protected by the decree of partition, and that there was no question about the title. Spriggs is shown to have had perfect confidence in McCreery, who had advised him that other persons were trying to stir up trouble, and advising against allowing himself to be disturbed thereby. That in this and other ways McCreery succeeded in deceiving Alexander R. Spriggs, as well as the other heirs, the record leaves us in no doubt whatever; and the record is wholly wanting in showing any disclaimer by Alexander R. Spriggs of any part of the 1500 acres. He is shown to have been on the land once in company with McCarthy, a sub-agent of McCreery; but McCarthy refused to say on the witness stand that Spriggs ever pointed out any line to which he claimed other than the line decreed in 1880. One of the plaintiffs' tenants was then living on that part of the tract covered by the 1500 acres, under a lease by McCreery as agent for the Spriggs heirs, and paid rent as such tenant.

In the face of this record what does the defendant McCreery offer in defense of his title to the land claimed by plaintiffs? First, he would have us go back to the original contract of Jackson Spriggs for the third of 12,000 acres, and the contract with Bloomer, the tax purchaser, redeeming the land from the tax sale, and to now correct the alleged mistake in the partition decree, for which, if a mistake, he as one of the commissioners of the court is in part responsible. In our view of the case it is wholly immaterial whether or not a mistake was made in laying off the Spriggs land in the Francis and Dushane suit. The fact is that, as therein allotted the Spriggs heirs, they claimed the land, and that McCreery as agent claimed it for them up to the time and after he discovered 1e supposed excess of acreage by survey made by Curtis, sur-

veyor, in 1893. Although he shortly after this began to lay his plans to get that excess of acreage for himself, it was not until years afterwards that he in any way disclosed to his principals that there was any dispute about the title to the land allotted to them in 1880, and he never in fact disclosed to them until after he obtained the deed in 1907, from a part of them, that he was intending to acquire title to the 1500 acres without consideration, in the manner shown. Nor does it matter that the decree of partition may have been pronounced without jurisdiction; the parties thereto elected to take and hold under it; it amounted at least to a parol partition of the land, and all the parties thereafter held and sold and conveyed with reference to that partition. A court of equity would not suffer the parties to such a partition, after so many years, to repudiate it, and certainly will not permit McCreery to do so in the interest not of the original partitioners but in consummation of his evil purposes to get from his principals what belongs to them. Freeman on Cotenancy and Partition, sec. 402. Such a partition and possession under it will take the case out of the statute of frauds. 1 Tiffany on Real Property, sec. 203.

Another proposition neutralizing defendants' theory of a void decree of partition is that plaintiffs' ripened their right into good title in severalty as against their co-tenants, by color of title and adverse possession under it. In *Russell* v. *Tennant et al.*, 63 W. Va. 623, point 4 of the syllabus, we held that, "A tenant in common in sole possession of the land, may make his possession adverse to his fellow-tenant, by repudiating or disavowing the relation of tenancy in common between them and any act or conduct of his signifying intention to hold, occupy and enjoy the premises exclusively of which the tenant out of possession has knowledge, or of which he has sufficient information to put him upon inquiry, amounts to an ouster of such tenant, and from the time when he has notice thereof the possession of the other party is adverse." And we held in that case that where adverse possession is so established against a cotenant the deed, will, patent or other intrument under which both had claimed originally operates in favor of the claimant by adverse possession as color of title so as to extend

87 W. Va.

to uninclosed lands.    And as affirming the same proposition we also refer to our other cases cited, of *Adkins* v. *Spurlock*, 46 W. Va. 139; *Cochran* v. *Cochran*, 55 W. Va. 178; *Justice* v. *Lawson*, 46 W. Va. 163; *Cooey* v. *Porter*, 22 W. Va. 120; and *Randolph* v. *Casey*, 43 W. Va. 289.

Another theory relied on is that plaintiffs had abandoned the land west of the line run from the eastern corner of the Meadows tract, and between it and the original line of the partition decree of 1880.    McCreery had that line run for his own purposes, and there is not a particle of evidence justifying the conclusion of any such abandonment by any one of the parties with knowledge of the facts which were for years concealed from them by McCreery.    On the contrary the evidence shows that although McCreery was in the meantime pursuing his purpose to acquire the land, he continued to rent it as the land of plaintiffs.

Another proposition is that the deed from James C. Spriggs and others to McCreery, one of the deeds attacked for fraud in its procurement, should be treated as a correction of the supposed error in the decree of 1880.    That deed does not purport to correct any error; besides it is not between the parties to the partition.    It does not purport to disturb the partition; it leaves the original partition stand as to every party to it; its only purpose, so far as McCreery is concerned, was to get all the land allotted to plaintiffs between the partition line laid down on the plat and the line which he had run for his own purposes from the eastern corner of Meadows' land.

Another principle which entitles plaintiffs to relief against McCreery is that an agent or attorney while standing in that relationship will not be permitted to deal with the subject of the agency so as to obtain any part of it for himself.    And any interest therein obtained by him for the purpose of perfecting or clearing title thereto in himself will be treated as accruing to his principal, and he will be regarded in equity as holding it in trust for his principal.    *Keenan* v. *Scott*, 64 W. Va. 137; *Newcomb* v. *Brooks*, 16 W. Va. 32; *Dorr* v. *Camden*, 55 W. Va. 226; *Central Land Co.* v. *Obenchain*, 92 Va. 130; *Segar* v. *Edwards*, 11 Leigh 213; *Reilly* v. *Oglebay*, 25 W. Va. 36.

A. S. Fuller and his successors in title stand in no better position, in respect to the rights of plaintiffs, as to the 600 acres within the 1500 acre tract, than McCreery stands with reference to the residue. The record discloses such a state of facts and circumstances with regard to the transactions between McCreery and A. S. Fuller that we may properly conclude that the latter had notice of McCreery's agency. No possession was ever taken under these fraudulent deeds. Nor does it appear from the record or other evidence that McCreery paid A. S. Fuller anything for his conveyance except a nominal consideration recited in the deed; nor did Fuller on the other hand pay McCreery anything for the re-conveyance to him of the 600 acres. So that there is no reason for withholding relief against him in favor of plaintiffs.

Our decision will reverse the decree below, and set aside and annul the deed from James S. Spriggs and others to James T. McCreery, of March 8, 1907; also the deed from said McCreery to A. S. Fuller, of October 13, 1897; and the deed from said Fuller and wife to their son F. M. Fuller, of February 3, 1898; as fraudulent and void, and remove the same as clouds upon the title of plaintiffs. But as to the deed from Joseph Soission to said A. S. Fuller, of December 1, 1896, and that of A. S. Fuller to said McCreery, of December 15, 1896, the decree will be that in so far as either of said deeds undertakes to vest title in said McCreery, that he took and holds the same in trust for plaintiffs, and that he shall make and execute a deed quitclaiming to them any and all interest in said land acquired thereby; and the cause will be remanded to the circuit court for further proceedings therein as directed herein, and further according to the rules and principles governing courts of equity.

*Reversed; decree for plaintiffs.*