# CHARLESTON.

IMA FARLEY *et al. v.* DIXIE ADKINS *et al.*

(No. 5330)

Submitted September 29, 1925. Decided October 6, 1925.

1. JUDGMENT—*As General Rule, Party to Suit in Court Having Jurisdiction is Bound by Determination of Rights, if Fairly Before Tribunal.*

As a general rule, a person having been made a party to a suit in a court having jurisdiction, is bound by the determination of his rights, if fairly before the tribunal. (p. 27.)
(Judgments, 34 C. J. § 1405).

2. SAME—*Object of Making Person Party to Legal Proceedings is to Enable Him to be Heard, and if He Fails to Set Up Rights, He May be Precluded From Again Litigating Them.*

The object of making a person a party to a legal proceeding is to enable him to be heard in the assertion of his rights, and, failing to set them up, that he may be precluded from again litigating them. (p. 27.)
(Judgments, 34 C. J. § 1322).

3. SAME—*Partition of Lands of Ancestor Among Heirs in Proceeding to Which They Are Parties is Adjudication of all Questions Affecting Title Thereunder, of all Those Entitled to Participate Therein.*

The partition of the lands of an ancestor among his heirs, in a proper proceeding under Chapter 79, Code, to which they are parties, is an adjudication of all the questions affecting the title in the lands so partitioned, of those entitled to participate therein. (p. 25.)
(Judgments, 34 C. J. § 1359).

4. SAME—*In Partition Proceedings, One of Heirs Claiming to Hold Some of Lands in Question Under Deed From Ancestor is Estopped by Decree From Afterward Asserting Greater Interest Than That Conferred by Decree of Partition.*

Where in such proceeding one of the heirs claims to hold some of the lands so partitioned, under a deed from the ancestor, and he was a party to the suit, he is estopped by the decree from afterward asserting against his co-partitioner any greater interest in the land partitioned, by reason of said conveyance from the ancestor, than that conferred upon him by the decree of partition. (p. 26.)
(Judgments, 34 C. J. 1357).

(NOTE: Parenthetical references by Editors, C. J.—Cyc. Not part of syllabi.)

Appeal from Circuit Court, Mingo County.

Ejectment by Ima Farley and others against Dixie Adkins and another. Judgment for plaintiffs, and defendants appeal.

*Affirmed.*

*J. L. Stafford,* for appellants.

*Goodykoontz & Slaven,* for appellees.

WOODS, JUDGE:

Ima Farley, Steve Sams, Bessie Walters and Bash Reed, the last two being infants, instituted an action in ejectment in the circuit court of Mingo county, against Dixie Adkins and Boyd Adkins, to try title to a parcel of land situate on the east side of Pigeon Creek in said county. From a judgment for plaintiffs, the defendants appeal.

Stephen Adkins, the owner of a large tract of land, situate on both sides of Pigeon Creek, by deed dated August 10, 1896, conveyed 300 acres by "general" description to his son Boyd Adkins, for a mere nominal consideration. A small part of said 300 acres lay east of Pigeon Creek. Because of the vague description of the closing line or lines on the east side of the creek, this dispute arose. The controversy here is restricted to this part.

Stephen Adkins died intestate sometime after the making of the deed to his son, leaving a wife and seven children. On September 1, 1903, all his heirs, except Chloe A. Sams and Boyd Adkins, conveyed to William Sams, husband of Chloe A. Sams, their undivided interest in the land (including land in controversy) of which Stephen Adkins died seized. Shortly thereafter Chloe A. Sams instituted a partition suit against Boyd Adkins, Bashaba Adkins (wife of Stephen Adkins) and William Sams, to partition the lands of Stephen Adkins, intestate. Boyd Adkins appeared in this suit, demurred to the bill, and on the overruling of the demurrer, filed an answer. Commissioners were appointed to allot dower to the widow, Bashaba Adkins, and to partition the land "in the bill and proceedings mentioned" and containing "about one hundred acres," between the other parties, one-seventh to Boyd Adkins, one-seventh to Chloe A. Sams, and five-sevenths to William Sams. The commissioners' report was filed and the report confirmed by a decree of September 22, 1904, said decree reciting that all parties in interest were satisfied. A part of the land allotted to Boyd Adkins, as well as the land allotted to Chloe A. and William Sams, includes some land within the lines of the Boyd Adkins deed of 1896, as fixed by him. The interests of Chloe A. Sams and William

Sams were allotted together and designated as "Tract No. 1." This is the tract of land declared on by metes and bounds in this action of ejectment. "Tract No. 2" was allotted to the widow (now dead), as her dower in said estate, and at her death "the same to go to Boyd Adkins, in fee simple, as his share of the estate of his father." No appeal was taken from this decree. It was recorded in the office of the clerk of the county court, as provided by law. By deed of August 16, 1904, William Sams undertook to convey to his wife, Chloe A. Sams, his interest in the land so allotted to them. By deed of October 21, 1904, recorded February 8, 1905, Boyd Adkins undertook to convey to his wife, Dixie Adkins, the tract of 300 acres acquired from his father. Later Chloe A. Sams died intestate, leaving her husband, William Sams, and the four plaintiffs here, as her heirs. William Sams, by deed dated January 30, 1923, conveyed his curtesy estate in his wife's land as well as the legal title to the interest attempted to be conveyed to his wife, as aforesaid, to the said plaintiffs, thereby vesting them with fee simple title to said "Tract No. 1", described in said partition suit. The issue raised by these facts is the title of the plaintiffs to the land described in the declaration—the land allotted to Chloe A. Sams and William Sams, as aforesaid. There is no disclaimer by the defendants, although the boundaries claimed by them do not cover two parcels, shown on the trial map as "B" and "C", and within the plaintiffs' land, declared on, thus limiting the controversy to an interlock between the Boyd Adkins conveyance from his father and the lands allotted to Sams and wife in the partition.

The plaintiffs and defendants here both assert title from a common grantor. In such case the plaintiffs are not required to go back of the common source. *Porter* v. *Staley*, 99 W. Va. 91; *Winding Gulf Colliery Company* v. *Campbell*, 72 W. Va. 449; *Carroll* v. *Mitchell*, 37 W. Va. 130; *Summerfield* v. *White*, 54 W. Va. 311. They have shown an unbroken chain of title here from Stephen Adkins, the common source. The land claimed by them has been identified. In fact, it is undisputed that the land defined by the evidence is identical with that set out as "Tract No. 1", in the partition suit. This makes a

consideration of the effect of said partition on the rights of
the litigants necessary.  Section 1, chapter 79, Code, provides
that circuit courts have jurisdiction in cases of partition, and
in the exercise of such jurisdiction may take cognizance of
all questions of law affecting the legal title, that may arise
in the proceedings. *Hudson* v. *Putney*, 14 W. Va. 561.  How-
ever, it does not authorize the court to pass on a title of a
stranger, claiming under a different title, adverse to the one
under which the partition is made. *Davis* v. *Settle*, 43 W. Va.
17.  Under this provision of our statute a court of equity in
a suit for partition of lands may remove a cloud in the title
or pass upon an adverse claim to the land. *Moore* v. *Harper*,
27 W. Va. 362.  In a suit by the heirs to partition the real
estate of their deceased mother, where one of the heirs claimed
to have a deed from the mother for the land, it was held that
the deed could be set aside in the partition proceeding, for
fraud in the procurement thereof, or that the grantor had
not sufficient mental capacity to make it. *Orum* v. *Rose*, 74
W. Va. 164.  The court may determine title between con-
flicting claimants of an undivided interest in the land. *Wright*
v. *Pittman*, 73 W. Va. 81.  In all cases of partition, the rights
and titles of the parties are required to be set forth in the
pleadings.  This technically puts in issue the title to the land
asked to be divided, and, by an answer and denial or other-
wise, the title may be put in issue and be adjudicated.  The
decree in a partition suit, however erroneous, if the court had
jurisdiction cannot be attacked collaterally. *Bowers* v. *Dick-
inson*, 30 W. Va. 709.  Under such a decree a co-partitioner
cannot thereafter assert against his co-partitioners any greater
interest in the land partitioned than that conferred upon him
thereby. *Tolley* v. *Poteet*, 62 W. Va. 231.

Code, chapter 117, section 8, makes the recordation of the
decree of partition, in the office of the county clerk of the
county in which the land is partitioned, as effectual to convey
the legal title of such lands to the person to whom the same
is assigned by the report of the commissioners, and the de-
cree of the court, as deeds of partition would be if duly made
by the parties. "As the basis for the introduction * * * of
a decree of partition as evidence of title, it suffices to show,

by the orders made and entered in the cause, that the court rendering the decree * * * had before it the subject matter of the suit and the parties." *Winding Gulf Colliery Co.* v. *Campbell, supra.*

Now apply these principles to the case under consideration. As a general rule, a person having been made a party to a suit in a court having competent jurisdiction, and laboring under no disability, is bound by the determination of his rights, if fairly before the tribunal. When their rights are thus passed upon and determined, such parties are concluded from again litigating them in the same or another tribunal. This principle of law is so trite as to not require citation of authority. In this case, it appears that Boyd Adkins was duly brought into a court of competent jurisdiction for the purpose of having his rights in these lands ascertained and established. It is presumed that he asserted all the rights that he had therein. The proceeding was for a partition of the land if it could be made; or, if not, for its sale. He was bound to know that if the conveyance from his father covered any part of the land sought to be partitioned in such suit, such fact must be established, so as to enable the partition to be fairly and justly made. It may have been that the previous conveyance was charged against him as an advancement. The facts here would warrant such action. Again he might elect to bring the property so advanced into hotchpot. Whatever rights he may have asserted in the land the decree recites that he was "satisfied" with the partition made. The very object of making a person a party to a legal proceeding is to enable such person to be heard in the assertion of his rights; and failing to set them up, that he may be concluded from again litigating them. If the decree was erroneous, it could have been reversed on a bill of review or by an appeal taken within the time allowed by law. This was not done. So long as the decree stands, as to the parties thereto, it must be held to import absolute verity. *Harrison* v. *Gillespie*, 204 Fed. 384.

The plaintiffs having shown a recoverable legal title to the land in controversy, how do the defendants seek to defeat it? They say that the title has become vested in them by adverse

possession. The law places the burden of proving this de-
fense upon the one who seeks to profit by it. The rule of
common acceptation is that, as between co-tenants, the entry
and possession of one is deemed the entry and possession of
all. *Russell* v. *Tennant,* 63 W. Va. 623; *Jarrett* v. *Osborne,*
84 W. Va. 559. But, admitting that this rule has no appli-
cation here where the lands have been partitioned and each
co-partner allotted his portion thereof in severalty, and that
the defendants are permitted to claim that the lines of the
deed from the ancestor covered the land in question, the
evidence is wholly insufficient to establish this defense. No
evidence was introduced to show that the defendants had
ever had such possession of the particular tract of land here
claimed by the plaintiffs as would amount to a clear and
positive and continued disclaimer, and disavowal of the
owner's title. The defendants never lived on the tract al-
lotted to the plaintiffs. The law as to the possession outside
of an interlock, notwithstanding color of title, being unavail-
ing would apply here. *Camden* v. *West Branch Lumber Co.,*
59 W. Va. 148; *Pardee* v. *Johnston,* 70 W. Va. 347.

The other question urged is that of forfeiture of the plain-
tiffs' title by their failure to have the land entered in their
names for taxation. Of course, there is no burden upon the
plaintiffs to prove taxation, although, under certain circum-
stances, the defendant in ejectment may defeat the action
by proving on his part a forfeiture of the plaintiffs' title for
non-entry. The defendants here have not proved non-entry
of the claim of the plaintiffs, except in the names of the plain-
tiffs and William Sams. From 1904 to 1923, the records from
which the land books are made, showed the plaintiffs' title in
the name of Chloe A. Sams, and it was not proved that the
land was not charged in her name. But even if she was not
so charged, the facts here do not show a forfeiture.

The plaintiffs and defendants in this action are claiming
the *same land.* Not only are they claiming the same land, but
they are also claiming the *same title* to this land. Only one
title to this land is involved, that of Stephen Adkins, claimed
by the defendants under a deed from him and by the plain-
tiffs by descent from him. The question here is not one of

adverse titles, but of adverse claims to the same title.  The payment of taxes by one claimant of a title can not enure to the benefit of a claimant of an adverse title who has paid no taxes, but the title of an adverse claimant of a certain title is saved from such forfeiture by the payment of taxes by an *adverse claimant of the same title.*  The claim of title of the plaintiffs herein has been saved from forfeiture by the payment of taxes by the defendants, who are adverse claimants of the same title. *State* v. *West Branch Lumber Co.,* 64 W. Va. 675; *Chilton* v. *White,* 72 W. Va. 545.

In view of the principles herein announced and sustained by the authorities cited, the court committed no error in the giving and refusal of 'instructions complained of by the defendants.

The judgment of the circuit court was right, and should be affirmed.

*Affirmed.*