# CHARLESTON.

Rolfe Coal Mining Company *v.* Matt Redden *et al.*

(No. 5503)

Submitted March 31, 1926.   Decided, June 5, 1926.

(Rehearing Denied November 12, 1926.)

1. Estoppel—*Where Partition Was Had in Creditor's Suit, and Purchaser of Land Allotted to Debtor as Well as Other Coparceners for Many Years Recognized Partition, They, Heirs, Devisees and Assigns, Were Estopped from Attacking Collaterally Partition Decree.*

Where a creditor's suit is instituted against a debtor to sell his undivided interest in land and a partition is therein

had between the owners of the undivided interests in the land, regularly made and decreed, and the purchaser of the land allotted to the debtor, as well as the other coparceners, hold, sell and convey under their respective allotments, and for many years recognize the partition by acts thereunder and in conformity therewith, they, their heirs, devisees and assigns will be estopped from attacking collaterally the partition decree. (p. 60.)

(Estoppel, 21 C. J. § 225.)

2. JUDICIAL SALES—*If Special Commissioner Includes Land in Deed Which Decree Did Not Authorize Him to Sell, and Which Was Not Sold, Grantee Receives Nothing More Than Color of Title Thereto.*

If a special commissioner includes land in his deed which the decree did not authorize him to sell, and which was not sold, the grantee receives nothing more than a color of title to the land so included in the deed without authority. (p. 64.)

(Judicial Sales, 35 C. J. § 196 [Anno].)

(NOTE: Parenthetical references by Editors, C. J.—Cyc. Not part of Syllabi.)

HATCHER, JUDGE, absent.

Error to Circuit Court, Raleigh County.

Action by Rolfe Coal Mining Company against Matt Redden and others. Verdict for plaintiff, defendant brings error.

*Reversed and remanded.*

*C. M. Ward, C. C. Sanders, Brown, Jackson & Knight* and *Herman L. Bennett,* for plaintiff in error.

*Price, Smith & Spilman, Ashton File* and *W. W. Goldsmith,* for defendant in error.

WOODS, JUDGE:

This action was instituted in the circuit court of Raleigh county to recover 2,000 acres of land described in the declaration, which is alleged to be unlawfully withheld from the plaintiff. The defendants disclaim as to all but 550 acres. A verdict was directed for the plaintiff, and defendants complain of the judgment entered thereon.

This controversy arises out of a certain creditor's suit, to-wit: Francis & Dushane v. Wilhelm et al., pending in

the circuit court of Raleigh county from 1879 to 1884. The court in that case, being of opinion that a partition should be had before Wilhelm's interest in a certain boundary of land was sold, decreed that a partition be made, and proceeded to appoint commissioners to go upon the land and divide the same into three equal parts, assigning one to George C. Bloomer, one to Jackson Spriggs' heirs, and one to John Wilhelm and Joseph Soisson—the last piece to be divided in equal parts between Wilhelm and Soisson. On May 17, 1880, the commissioners filed a report allotting the Spriggs' heirs 4,000 acres off the south end of said boundary, John Wilhelm and Joseph Soisson 4,000 acres next adjoining, and the remaining 7733 acres on the northern and western end to George C. Bloomer, and giving the calls for said division lines. The court, on June 9, 1880, entered a partition decree, reciting the filing of said report without exceptions, and confirming the partition and allotment therein reported. It then set out the calls of the division lines, as reported by the commissioners, as follows: The division line between Spriggs' heirs and Wilhelm and Soisson, "Beginning on the south side of the original line of Lot No. 9, at the head of seven mile branch, a branch of Pinch-Gut, a corner of Jas. Meadows; thence running north 25° E. through Lot No. 9 to intersection of the outline on the north side of said lot. And the division line between Wilhelm & Soisson and Geo. C. Bloomer, beginning on the south line of lot No. 5, sixty poles west of Robert Scott's corner on said line, and thence running N. 50° East to Glade Creek near Wm. Kidwell's lower corner and thence down Glade to the intersection of the original line. They then divided the lot assigned to John Wilhelm and Joseph Soisson as follows: Beginning on the south side of the original line of Lot No. 9, about 75 poles east of the corner K laid down on the plat, and thence running N. 5° W. crossing Pinch Gut to Glade Creek near a corner of Harrison Redden's, thence down said Creek to the line of said Bloomer, giving to said Wilhelm 2,000 acres and to Joseph Soisson 2,000 acres." The decree then states that plaintiffs' judg-

ment is first lien on Wilhelm's land, and directs that John W. McCreery ''shall sell the 2,000 acres of land assigned to Wilhelm, or enough thereof to satisfy this decree'', if same is not paid within thirty days. A number of subsequent decrees were entered in this cause from time to time, until a sale was finally made on April 28, 1884, to Dushane, party plaintiff in said suit, and said sale confirmed, by decree of May 1, 1884. In the last decree McCreery was appointed special commissioner ''to make, execute, acknowledge and deliver a deed for said 2,000 acres of land to said J. M. Dushane.'' The commissioner seems never to have reported to the court that he had made the deed, and no decree is found confirming the same. George C. Bloomer was a party to the partition suit, likewise the Spriggs' heirs and possibly Soisson. By the deed dated June 2, 1884, the special commissioner conveyed to Dushane a tract of 2,000 acres minutely described by metes and bounds. While the deed refers to authority under a decree of October 23, 1883, the record is clear that the last mentioned decree intended to direct the sale of the same 2,000 acres mentioned in the partition decree of June 9, 1880, as set off to Wilhelm.

The declaration sets out the identical property attempted to be conveyed in the commissioner's deed. The evidence is clear that the land described in the commissioner's deed overlaps on the land of Bloomer, if the partition lines are to stand. This over-lap is approximately 550 acres. Defendants and their predecessors in title have had continuous possession of the Bloomer 7733-acre tract since 1882; while they claim that plaintiff has had possession under deed to Dushane since about 1908. Neither party has had actual physical possession within the disputed area of 550 acres until 1923, when Matt Redden, one of the defendants, was placed thereon. Taxes have been paid by both parties on lands claimed by them.

The creditors suit aforesaid was brought at the instance of Dushane and another. The court in order to make the relief sought as effective as possible directed that the lands in which Wilhelm claimed an undivided interest be par-

titioned between the respective owners. All parties claiming under a tax deed to Bloomer, with possibly the exception of Soisson, were before the court, and it proceeded to adjudicate the rights of the parties thereunder. Dushane finally became purchaser of Wilhelm's portion, and his bid was credited on his judgment. Whatever title Dushane acquired was by virtue of the partition decree, which designated the portion to be sold for Wilhelm's debts. Surely Dushane and his successors in title are now estopped from denying the validity of the partition decree. A party who brings about litigation by which he benefits is estopped from later attacking the proceeding therein. *Tolley* v. *Poteet,* 62 W. Va. 231. In that case a widow, who participated in a partition proceeding and took property thereunder, was estopped from later making an election not to take under the will. The court there said: "So far, therefore, as the plaintiff is concerned, she is forever concluded from asserting any other or greater interest than she elected to take under the will, and took by the decree of the court in the partition proceedings." And in *Marshall* v. *McDermott,* 79 W. Va. 245, the court in recognizing this principle said: "One who as a party is interested in real estate sold at a judicial sale and with full knowledge of all the essential facts accepts without objection the benefits of the sale, the proceeds of which are applied to his relief, is estopped to question the validity of the decree. *Howery* v. *Helms,* 20 Gratt, 1; *Langhyer* v. *Patterson,* 77 Va. 470; *Robertson* v. *Smith,* 94 Va. 250." The Rolfe Coal Mining Company as successor in title of Dushane has no better or greater right to attack the decree than its predecessor. Other parties have recognized the partition as binding and have acted in accordance therewith. To permit it now to be overturned would be inequitable. Our court recognized this principle in the case of *Spriggs* v. *McCreery,* 87 W. Va. 204, where an attempt was made to repudiate the identical decree now attacked in the instant case. The court there held: "If, after a decree of partition is entered in a suit not brought for that purpose but by a creditor of one of the partitioners

to subject his interest in the land partitioned to the payment of his debts, the several partitioners to whom allotments were so made take and hold in severalty the parts allotted to them respectively and thereafter sell, convey, and lease the land with reference to such partition, equity will not suffer them or their successors in title, years afterward, to repudiate such partition.''

It is now too late to attempt to attack the validity of the tax sale and to show title by virtue of former conveyances, neither of which was done in the original proceeding. The court found Wilhelm and Bloomer to be co-tenants, and proceeded to adjudicate their titles, as it had a right to do. All parties to the creditors' suit, as well as their successors, are bound by the adjudication of partition. *Spriggs* v. *Mc-Creery, supra.* This court said in *Farley* v. *Adkins,* 100 W. Va. 22: ''Section 1, c. 79, Code, provides that circuit courts have jurisdiction in cases of partition, and, in the exercise of such jurisdiction, may take cognizance of all questions of law affecting the legal title that may arise in the proceedings. *Hudson* v. *Putney,* 14 W. Va. 561.  *  *  *  In all cases of partition, the rights and titles of the parties are required to be set forth in the pleadings. This technically puts in issue the title to the land asked to be divided, and, by an answer and denial or otherwise, the title may be put in issue and be adjudicated. The decree in a partition suit, however erroneous, if the court had jurisdiction, cannot be attacked collaterally. *Bowers* v. *Dickinson,* 30 W. Va. 709. Under such a decree, a co-partitioner cannot thereafter assert against his co-partitioners any greater interest in the land partitioned than that conferred upon him thereby. *Tolley* v. *Poteet,* 62 W. Va. 231.''

The deed under which plaintiff claims contains the same metes and bounds set out in the commissioner's deed to Dushane. Whatever force Dushane's deed may have had, it got by virtue of the partition decree of June 2, 1880. The authorities hold that a sale is void in so far as it exceeds the provisions of the decree of sale. *Bank* v. *Hyer,* 46 W. Va. 13; *Monesson Improvement Co.* v. *Flynn Lumber Co.,* 77 W.

Va. 408; *Chapman* v. *Branch,* 72 W. Va. 54; Freeman, Void Judicial Sales, §35; 35 C. J. 12. "Purchasers at a judicial sale are protected when the power to make the sale is expressly given, not otherwise. It is only when they buy on the faith of an order of the court, which clearly authorizes the act to be done, that the shield of the law is thrown around them." 16 R. C. L. p. 25, §19. A ratification by the court of a sale which exceeds the authority directing said sale, must be considered as given inadvertently, and void in so far as it exceeds said authority. *Shriver* v. *Lynn,* 2 How. 43. All of the intervening decrees between that directing partition and the one confirming sale to Dushane, refer to "2,000 acres," and in absence of proof to the contrary would be presumed to follow the authority of the decree of June 2, 1880, directing sale of Wilhelm's portion of the tract, which became final at the end of that term of court so far as the record discloses. Hence, in view of the foregoing authorities, the commissioner had a right to sell only the property within the lines established by the decree of partition; and any attempt to convey property over on Bloomer's side of the line drawn between him and Wilhelm was void.

It follows that the deed in the instant case was void in so far as Dushane and his successors were concerned, as to the 550 acres beyond said partition line between Bloomer and Wilhelm. Granting, however, that the deed gave color of title to the land in controversy here, it would require actual possession of that part of the property to ripen it into good title. On the other hand, Bloomer and his successors accepted the partition as final and took over possession at once. Bloomer transferred his 7733 acres, referring to the partition decree in the deed, to A. S. Fuller and J. K. Ewing a few months after the partition. These parties placed a tenant on the property in 1882 (two years before the deed was made to Dushane), and have had a tenant on the tract ever since. Their constructive possession has long since ripened into actual possession. Any weakness in the defendants' title will not work to the benefit of the plaintiff,

for, as a general rule, in ejectment the plaintiff must recover upon the strength of his own title. *Coal Company* v. *Howell*, 36 W. Va. 489.

Thus we have seen that the defendants have shown prior color of title to the tract in question. They have shown prior possession under color of title. At the time they entered into possession the plaintiff had neither possession, claim nor color, and therefore the defendants' possession extended to the 550 acres. This possession continued for more than twenty years and ripened into full legal title before the plaintiff took possession under its colorable deed. Plaintiff has never been in possession of the 550 acres and defendants' possession has never been ousted or disturbed. For reasons stated the judgment below is reversed and the case remanded.

*Reversed and remanded.*